Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

TRUCK DRIVERS, CHAUFFEURS AND HELPERS LOCAL NO. 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

United States District Court
S. D. New York.
Nov. 16, 1962.

Jacques Schurre, New York City, for National Labor Relations Board.

Cohen & Weiss, New York City, for respondent; Bruce H. Simon, New York City, of counsel.

Zelby & Burstein, New York City, for Charging Party, United States Trucking Corp.

DAWSON, District Judge.

This proceeding came before the Court on a petition filed by the Regional Director of the Second Region of the National Labor Relations Board for a temporary injunction, pending the final disposition of the matters involved before the Board, alleging that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (D) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (D). This section proscribes strikes, threats of or inducements to strike in support of a jurisdictional dispute. It is designed to protect commerce from disruption as a result of jurisdictional claims of labor organizations to particular work.

The section makes it an unfair labor practice for a labor organization or its agents

"to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use * * * or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services * * * where * * * an object thereof is—

\* \* \* \* \*

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization * * * unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work".

A hearing was held. The Court finds the following facts:

The respondent is a labor organization.

The City of New York is erecting a garage in Maspeth, Long Island, for the Department of Sanitation at an estimated cost of over $6,000,000. The general contractor is Joseph F. Blitz, Inc. Blitz subcontracted the concrete work to Concrete Construction Corporation, a wholly-owned subsidiary. Concrete Construction contracted with Colonial Sand & Stone Co., Inc. to supply the sand, stone and bulk cement. Colonial in turn contracted with Universal Atlas Cement Division of United States Steel Corporation to supply the bulk cement. Universal has a distributing point in Glen Cove, Long Island. In order that it might supply the bulk cement Universal contracted with United States Trucking Corporation, the charging party, to pick up the cement from Universal's distributing point in Glen Cove and deliver it to the job site.

United States Trucking Corporation has a collective bargaining agreement with its own employees, who are represented by Truck Drivers Local Union No. 807, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter called Local No. 807).

Colonial Sand & Stone Co., Inc. has a collective bargaining agreement whereby its employees are represented by the respondent union (hereinafter called Local No. 282).

On the morning of October 9, 1962, United States Trucking Corporation, pursuant to the arrangements hereinabove referred to, picked up a truck load of cement at Universal's plant in Glen Cove and drove it to the job site at Maspeth, Long Island. At about the same time Colonial Sand & Stone Co., Inc. was delivering truck loads of sand to the same job site. On that day the business agent of the respondent at the job cite in Maspeth, Long Island, stated to the representative of the general contractor that the work of driving trucks loaded with cement belonged to respondent union, Local No. 282, and that if the cement was delivered by trucks driven by members of Local No. 807 they would direct the members of Local No. 282, who were delivering the sand, not to dump the sand, and, in effect, threatened that if any cement were brought to the job driven by members of Local No. 807 the job could not go ahead, because no sand would be delivered or dumped by the members of Local No. 282 (the respondent herein). As a result of this threat United States Trucking Corporation was directed not to unload the cement but to take it away, and after that time the trucking corporation was unable to make any further deliveries of cement to the job site until respondent was temporarily restrained by an order of this court. There is no dispute that respondent has not been certified by the National Labor Relations Board as a collective bargaining representative of any employees of United States Trucking Corporation.

We have, therefore, a typical jurisdictional dispute between two locals of the same International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Apparently the locals are part of the Joint Teamsters Council for Metropolitan New York. They have submitted their jurisdictional dispute for determination by the Joint Teamsters Council. The evidence was that the Joint Teamsters Council had decided, the day before the hearing was held by this Court, that jurisdiction over the deliveries should belong in Local No. 282, the respondent herein. At the time of the dispute the respondent made a claim for arbitration against Colonial Sand & Stone Co., Inc., claiming that by reason of the fact that members of the union not members of its local were delivering cement to the job, Colonial was violating its collective bargaining agreement with the respondent. Although demand for arbitration has been made, no arbitration award has yet been handed down.

It was the intent of Congress, in passing the section of the statute referred to above, to proscribe jurisdictional disputes so that those disputes could be settled peaceably and without work stoppages. The same objective has been borne in mind by the Teamsters International which provides in its constitution in Section 12:

"Where two (2) or more Local Unions are in dispute concerning jurisdiction, there shall be no work stoppage of the involved operation, but such controversy shall be submitted for determination to the Joint Council * * *."

The determination of the Joint Council, or other union body, may, of course, be effective as between members of the union, but is not necessarily binding upon the employers. To solve this type of problem, Congress provided in the act, in subdivision (k) as follows:

"Hearings on jurisdictional strikes

"(k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed." (Title 29 U.S.C. § 160(k)).

The Labor Board is therefore vested with authority to determine this jurisdictional dispute. In the meantime, there should be no occasion for a work stoppage; and in order to maintain the *status quo* and keep the work operating the Labor Board is empowered under Section (*l*) of the act to apply for an injunction pending determination of the matter by the Board.

Applications for injunctive relief under the act have frequently been made to this Court. The act empowers the Board, upon the filing of appropriate charges, to issue orders and hear and determine complaints that labor organizations have been engaged in unfair labor practices. These proceedings are ultimately reviewable by the Court of Appeals, but since such hearings and appeals may be protracted and certain unfair labor practices may give rise to unjustifiable interruptions of commerce, Congress has provided for the issuance of preliminary injunctions pending determination of the issues by the Board. In the present hearing the issue before the Court is merely whether the record before it contains enough evidence to form a basis for finding that there is reasonable cause to believe that the charges filed by the petitioning party are true. Douds v. International Longshoremen's Assn., 242 F.2d 808, 810 (2d Cir., 1957).

There can be no doubt from the record in this case that the respondent union did encourage a refusal of its members to handle certain materials with the object of forcing an employer (United States Trucking) to assign particular work to the employees in the respondent labor organization. The Board, therefore, had good reason to believe that an unfair labor practice had been committed by respondent union. The Board has noticed a hearing; pending determination by the Board of the matter before it, which includes a determination of the jurisdictional dispute, an appropriate preliminary injunction should be issued, according to the provisions of the act.

The respondent union urges that the refusal of employees of Colonial to work on the Maspeth site was in furtherance of a primary dispute between respondent union and Colonial. The dispute, however it arose, is not the principal issue here. The objective of the union was to compel United States Trucking Corporation to

utilize members of respondent union in the transportation of the cement, or, in the alternative, to compel Colonial to deal with some party other than Universal in the securing of the cement.

The situation is very similar to that in Local No. 636 v. N. L. R. B., 108 U.S. App.D.C. 24, 278 F.2d 858 (1960). As the court pointed out in that case, there could be no dispute on the facts "that the union was engaging in a strike for the purpose of affecting an employer other than the primary employer." There is ample evidence in the record from which the Board could conclude that the actions of the respondent were motivated by a desire to force Colonial to cease doing business with Universal, so long as Universal did not employ members of the respondent local for the delivery of the cement. In this sense this was not a strike arising out of a primary dispute, but rather was a typical jurisdictional strike.

The Court therefore finds that a preliminary injunction as sought by the Board should be issued.

Submit, on notice, proposed findings of fact, conclusions of law and preliminary injunction consistent with this opinion.