**Fred R. SWORD, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 1154.**

United States District Court
S. D. West Virginia,
at Huntington.

April 19, 1963.

Harry F. Thompson, Jr., Huntington, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to disability insurance benefits or to a period of disability under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that there is substantial evidence to support the Secretary's decision and that defendant's motion for summary judgment should be granted.

On November 9, 1960, plaintiff filed an application for disability insurance benefits and to establish a period of disability alleging that he became disabled in January, 1960, because of "silicosis—back (slipped disc); legs are weak; low blood pressure." This application was

---

denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On July 27, 1962, a hearing examiner also found that plaintiff was not entitled to a period of disability or to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on September 6, 1962.

In order to meet the statutory definition of disability plaintiff had to establish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment or impairments which commenced no later than February 1, 1961, for entitlement to disability insurance benefits, and on or before February 9, 1961, for establishment of a period of disability. Plaintiff met the special earnings requirements during the effective period of the application and will continue to meet these requirements until March 31, 1964.

Plaintiff, who was 52 at the time of the onset of the alleged disability, had worked most of his adult life in the mines. His last mine job was that of a coal cutting machine operator. The machine was one controlled by levers and buttons, and does not require strenuous labor on the part of the operator. It is somewhat similar to operating a crane or other heavy machinery. He worked for above five years for his last employer. In January, 1960, plaintiff was "laid off" as the result of a general reduction of work forces at the mine. He then received unemployment compensation until that source of income was exhausted. He admits that at no time after his "lay off" in 1960 did he attempt to seek any type of employment. Other mines in the area have been working part time since his "lay off." It should also be noted that plaintiff had to travel approximately seventy miles to his mine job when he was not "boarding." It is only thirty-five miles to the City of Huntington, West Virginia, yet he made no attempt to secure employment in that city.

Despite his claim of silicosis, a slipped disc, weak legs, and low blood pressure, he has received no treatment save for a few chiropractic adjustments of his back in 1960. These adjustments showed good response. His claim for silicosis was denied after a chest surgeon had reported in March, 1961, that silicosis did not exist. In April, 1960, he was accepted for Vocational Rehabilitation.

Dr. H. L. Ballard, a chiropractor, reported on December 30, 1961, that he had treated plaintiff with fairly good results. His diagnosis was "Sacro-iliac subluxation with lumbo-sacral strain. Subluxation of the first and second cervical vertebrae, which is producing a pressure on the spinal cord at the base of the skull." He felt that plaintiff would improve markedly if the frequency of his visits were increased. He was of the further opinion that plaintiff should not be required to perform work involving heavy lifting, bending, or stooping. He felt that plaintiff could do work requiring no heavy exertion. Plaintiff could stand or sit at work without making his condition worse.

Dr. Don V. Hatton reported on January 2, 1961, that physical examination revealed normal eyes, ears, nose, throat, and chest. There was some slight tachycardia (rapid heart beat). There was no tenderness in the abdomen, no limitation of motion of the neck, and a slight swelling of the radial head (elbow) of the right forearm. Orthopedic examination and X-ray of the spine revealed only minimal to moderate arthritis in the lower spine with pain, arteriosclerosis consistent with his age, arthritis in the right elbow with little limitation of motion, arthritis in the cervical spine with pain on motion, and minimal impingement on the spinal cord canal, and hemorrhoids. No opinion was expressed as to plaintiff's capacity or ability to work.

In a report dated March 13, 1961, Dr. Rowland Burns stated that physical examination disclosed that plaintiff was well-nourished and in no immediate acute distress. He had no impairment of joint

mobility except that plaintiff had difficulty in flexing his spine more than ninety degrees. His chest was clear, and an electrocardiogram was within normal limits. His heart was not enlarged. His blood pressure was 120/70. Plaintiff's pulmonary function was within the lower limits of normal without significant or severe dysfunction. There was no neurological evidence of a herniated intervertebral disc. He also concluded that plaintiff had minimal, linear pulmonary fibrosis, and mild pulmonary emphysema. Dr. Burns finally stated that he could find no disease which could "present major disability except for the probable diagnosis of osteoarthritis which is a frequent entity in this age group." He then suggested that an orthopedist would be the proper person to evaluate the osteoarthritic condition.

Dr. Cole D. Genge on March 7, 1961, reported that, "The lung fields show accentuated markings in the inner zones possibly due to fibrosis but are otherwise clear throughout and show no evidence of recent disease. The diaphragms and bony thorax are normal."

Dr. M. L. White, Jr. concluded on August 12, 1961, after a physical examination and chest X-rays that:

"I think this man has bronchospasm secondary to a chronic bronchitis. I do not know what his pulmonary function studies showed, but certainly from the standpoint of his physical examination and from a standpoint of X-rays of his chest, I could not call him completely disabled. I am sure that he is having shortness of breath, but I feel that this will improve if he does give up smoking as we have advised, and I also gave him a prescription for syrup of noridodrine, one teaspoonful three times a day and at bed time. He might further improve with some aminophyllin preparation. I do think that this man is suitable from a physical standpoint for some Vocational Rehabilitation training, but I could not call him disabled to the point that he could receive a disability rating under the Social Security program."

He also found plaintiff's blood pressure to be 130/80, or normal.

Dr. J. E. Carter also examined plaintiff on August 25, 1961. He stated that X-rays had not revealed "Miner's asthma" (silicosis) but had revealed osteoarthritis in the lower spine. Plaintiff's heart was normal, and his blood pressure reading was 170/100, or moderately high. Plaintiff was ambulatory, and there was limitation of motion in his back. The respiratory and chest findings were negative. He reported no neurological findings. Vision was 20/30 in each eye. His diagnosis was osteoarthritis of the lower spine with left sacroiliac involvement, bronchitis and arthritis in the neck. These conditions were described as static.

Dr. J. E. Johnson reported on November 17, 1961, that X-rays of plaintiff's chest showed fibrotic changes in both lung fields and an osteoarthritis of the dorsal spine. Physical examination revealed a normal heart, a barrel-shaped chest, and abnormal breathing sounds (rales). His diagnosis was poor vision, fibrosis, and osteoarthritis in the upper and lower spine. He did not report that he had even treated plaintiff but remarked that plaintiff was unable to perform any gainful occupation.

This court has considered carefully the above discussed evidence as well as all other evidence of record, both objective and subjective. There is substantial evidence showing that plaintiff is not suffering from any medically determinable condition which has precluded or now precludes him from engaging in any substantial gainful activity. With few, if any, exceptions, plaintiff's difficulties have been described in such terms as "slight," "moderate," "minimal," and "mild." Dr. Johnson's opinion that plaintiff was unable to perform any gainful activity is clearly not binding on the hearing examiner, the Appeals Council, or this court. It must also be remembered that he has been accepted for Vocational Rehabilitation. Of particular significance is the fact that since plaintiff

 

was "laid off" in January, 1960, he had not even made an effort to seek any type of employment in the mines or otherwise or to make any use of his residual capacities. Gotshaw v. Ribicoff, 4th Cir., 307 F.2d 840 (1962); Hyde v. Celebrezze, (N.D.W.Va.), 210 F.Supp. 769 (1962). Also he did not cease working because of any physical or mental impairment.

Therefore, it is found that there is substantial evidence to support the decision of the Secretary that plaintiff is not entitled to disability insurance benefits or to a period of disability under the applicable sections of the Act, as amended. Defendant's motion for summary judgment is granted.