Mrs. Annie M. GOTSHAW, Appellant,

v.

Abraham A. RIBICOFF, Secretary of the Department of Health, Education and Welfare, Social Security Administration, United States of America, Appellee.

No. 8598.

United States Court of Appeals Fourth Circuit.

Argued June 4, 1962.

Decided Aug. 30, 1962.

John Bolt Culbertson, Greenville, S. C., for appellant.

John C. Eldridge, Atty., Dept. of Justice, (William H. Orrick, Jr., Asst. Atty. Gen., John C. Williams, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and CRAVEN, District Judge.

BOREMAN, Circuit Judge.

Claimant, Mrs. Annie M. Gotshaw, filed an application on October 12, 1957, to establish a period of disability pursuant to section 216(i) of the Social Security Act. On December 11, 1957, she filed her application for disability insurance benefits pursuant to section 223 of the Act. Both applications were denied.

Section 216(i) (2) of the Act, 42 U.S. C.A. § 416(i) (2), in effect at the time of claimant's 1957 applications, reads in pertinent part as follows:

"The term 'period of disability' means a continuous period * * * during which an individual was under a disability * * * but only if such period is of not less than six full calendar months' duration * *. No such period shall begin as to any individual unless such individual, while under such disability, files an application for a disability determination with respect to such period * * *."

Section 223(a) (1) (D) of the Act, 42 U.S.C.A. § 423(a) (1) (D), requires that an individual must be under a "disability" at the time of the filing of an application for disability insurance benefits.

Claimant's applications revealed that she was born on April 16, 1900. In her application of October 12, 1957, she stated that she had arthritis in her fingers and toes, high blood pressure, backache, that her back and feet hurt her so she couldn't do any work, and that her back caused her so much trouble she had to stop working. In describing her daily activities, she stated: "I do a little light housework. I cook one meal a day. I walk some for exercise so I won't get so stiff. I don't wash or iron." It appears that she had a fourth grade education and that she worked for about twenty years as a spinner in a textile mill.

The Social Security interviewer who contacted Mrs. Gotshaw reported: "Claimant is a white woman. Her fingers appeared to be drawn. * * * I observed no difficulty when she walked. She signed her name to the forms without any apparent difficulty."

In the report of Dr. Cashwell dated December 2, 1957, in answer to the question, "When did present illness or injury occur," the answer was "About six months ago." And in answer to the ques-

tion, "When did applicant become unable to work," the answer was "About one year ago." This report revealed that claimant was 5 feet 7½ inches tall and weighed 143½ pounds, that her subjective complaint was a backache and that the objective finding by X-ray was "arthritis of lumbar spine"; that she was ambulatory; that he had fitted her with a back brace; that he had advised her not to work; that her condition was "improving some" and "less discomfort" could be expected in the indefinite future. In answer to the question, "What optimum improvement can be expected, if any," Dr. Cashwell answered, "Indefinite."

Dr. Thomas reported on February 20, 1958, that he first saw claimant in October 1957 and that she was hospitalized under his care from October 22 to October 30, 1957. He said that there was some limitation of straight leg raising on the left "and some decrease in sensation over the outer surface of the left foot and leg, and slight diminution of the left achilles tendon reflex." This doctor diagnosed her condition as a "herniated disc in the lower lumbar region on the left." He stated that she had had "conservative treatment" with results which had not been too satisfactory and that, in his opinion, she was "disabled for any gainful occupation."

Claimant's applications were referred to the South Carolina State Agency of Vocational Rehabilitation. In a report dated March 4, 1958, that agency concluded that claimant did not have such a disability as to preclude her from engaging in substantial gainful activity. On April 4, 1958, the Bureau denied her application. Mrs. Gotshaw then sought reconsideration and another report from Dr. Thomas dated August 20, 1958, was submitted along with a second report of contact by a Social Security interviewer. Dr. Thomas reported that he first saw the claimant on October 22, 1957, that she was hospitalized from that date until October 30, 1957, that she received pelvic traction in the hospital, that he visited her daily in the hospital and monthly

since, and that he last saw her on August 8, 1958. He said that X-rays showed "demineralization of all visualized bones of the lumbar spine and pelvis with some arthritic changes at L5, S1," and he diagnosed her condition to be a "herniated disc, lower lumbar region on the left." In response to the question as to when Mrs. Gotshaw became unable to work, Dr. Thomas stated that she has "been *rated* disabled for work *since February 1958*." (Emphasis supplied.)

The State Agency of Vocational Rehabilitation again observed that claimant's impairment should respond to medical therapy or surgery, and adhered to its previous position that claimant was not disabled within the meaning of the Act. The Bureau again denied her applications and claimant requested a hearing. At the hearing on September 22, 1959, claimant testified, among other things, that she had not worked since September 1956, that she did not quit voluntarily and that she was laid off because she couldn't "keep the work up." She revealed that she had had arthritis for many years and long before she stopped working. *Until she was laid off she was working full time.* She then explained the circumstances of her layoff and, in response to a question by the Hearing Examiner asking whether she could have performed other work at that time, claimant replied: "I could have done light work, but the job they put me on, spinning, I couldn't have done. They tore out the old spinning room and put in new spinning machines, and you had to raise away up, and I had this arthritis in my neck and shoulders and couldn't do the work." Later she testified that she had not attempted to get any work other than in the textile industry, and that she didn't think she could "hold up to it." It was also brought out at the hearing that she had worn a back brace ever since she left the hospital in 1957, that she was afflicted with some bladder trouble although her principal trouble was her back and the arthritis, that she occupied herself by doing her housework, crocheting and reading. She stated that she did

the cooking, making beds and ironing for her husband and herself but that she did no mopping or lifting. She has not inquired as to the possibility of surgical relief from her condition and no doctor has suggested or recommended an operation.[1]

After the hearing there was filed a statement from the Greenville General Hospital giving the dates of Mrs. Gotshaw's hospitalization and a statement from Dr. Cashwell relating that he operated on claimant for a cystocele in 1956 with good results and that he referred her to Dr. Thomas for treatment of the pain in her lower back and leg. The Hearing Examiner rendered his decision, finding that claimant was not entitled to the establishment of a period of disability or to disability insurance benefits. A request for review was granted by the Appeals Council.

The Council then had Mrs. Gotshaw undergo two comprehensive examinations at government expense, one by Dr. Muller, a specialist in internal medicine and cardiology, and the other by Dr. Grier, a specialist in orthopedic surgery. The examination by Dr. Muller [2] did not reveal any disabling condition of a cardiovascular nature and her hypertension was described as "benign" and "uncomplicated." After physical examination and X-ray, Dr. Grier set forth in detail his findings [3] with respect to claimant's back, neck, shoulders, elbows, wrists, etc., and concluded, "This patient exemplifies a multiplicity of degenerative changes from a standpoint of her hips, ankles and feet, knees and hands. Each individual problem in itself is not disabling, however, the accumulative fact of her various problems is of definite significance."

The Appeals Council concluded that claimant was not under a disability within the meaning of the Act at any time

prior to the filing of her application in December 1957. This decision became the final decision of the Secretary of Health, Education and Welfare. Upon a petition for review the District Court held: "In the present case, the plaintiff's insured status under the 'quarters of coverage requirement' did not expire until after June 30, 1958. Prior to the expiration of this insured status and subsequent to the filing of the plaintiff's latest application, December 11, 1957, there is strong evidence that the plaintiff was under a disability. However, the plaintiff must prove that she became disabled on or before December 11, 1957." (Emphasis supplied). That court further held: "If there is substantial evidence in the record to support the Secretary's finding that she had not met the requirements of the Act by that date, then the court must affirm the Secretary's decision. Further, the court has no power to enter any judgment in anticipation of the filing of an application later than the December 11, 1957, application." Claimant appeals from the decision of the District Court.

The question here is whether there is substantial evidence in the record to support the Secretary's determination that the claimant has failed to establish the existence, at the time of filing her applications, of medically determinable impairments which would render her unable to engage in any substantial gainful activity. If there is substantial evidence in the record to support that determination, the District Court cannot set it aside.[4]

Dr. Cashwell reported on December 2, 1957, that he had advised claimant not to work and that she became "unable to work" about "one year ago." Dr. Thomas gave as his opinion in a letter report dated February 20, 1958, that "at pres-

---

1. Also submitted at the hearing was a letter from Dr. Murray stating that he treated Mrs. Gotshaw for an infected foot in March 1959, that the response to treatment was satisfactory and that she "also suffered from osteo arthritis involving her feet."

2. Report dated June 13, 1960.

3. Report dated June 22, 1960.

4. 42 U.S.C.A. § 405(g).

*ent*, she [claimant] is disabled for any gainful occupation." (Emphasis supplied.) In a second report dated August 20, 1958, Dr. Thomas stated that claimant has "been rated disabled for work since February 1958." In June 1960, Dr. Muller found no disabling condition of a cardiovascular nature and Dr. Grier found that, *at that time,* the "accumulative fact of her various problems is of definite significance."

As this court said in Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962):

> "The ultimate fact in issue; that is, Claimant's ability or inability to engage in any substantial gainful activity, is not to be resolved, however, solely on the basis of medical opinion evidence as to this ultimate fact. Opinion evidence on this issue is without weight. * * * This is a matter for administrative determination."

The record discloses that Mrs. Gotshaw had arthritis for many years; that she did not voluntarily quit work but worked steadily until she was laid off; that the operation of newly installed spinning machines required her to "raise away up" and she was unable to do the work; that she could have done light work but made no effort to secure other employment because she didn't think she could "hold up to it"; that she was able to perform certain normal household duties; that she had made no inquiry and sought no advice as to the possibility of surgical relief from her condition.

As established by the medical evidence and found by the Appeals Council, the claimant does have orthopedic difficulties but the Council further found that they consisted of arthritis and pointed out that " * * * any intervertebral disc involvement in October 1957 responded to conservative therapy without serious complications or progression * * *." Although Dr. Thomas in 1957 and 1958 diagnosed a herniated disc, neither Dr. Grier in his extensive examination nor Dr. Cashwell found this condition. Rath-

er, both of these doctors found that the claimant's back trouble was arthritic in nature.

■ It is established that the mere presence of a disease or medically determinable impairment does not automatically entitle a claimant to a disability period or disability insurance benefits under the Social Security Act. Instead, the impairment must cause "inability to engage in any substantial gainful activity." See this court's recent opinion in Underwood v. Ribicoff, supra, where it is stated that " * * * a recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual." There we pointed out that the fact finder must determine whether or not such limitation of capacity amounts to disability within the terms of the Act. 298 F.2d 850, 852. Finally:

> "Thus, even though severe physical limitation be established, it is still necessary in applying the legal standard to relate this limitation to the Claimant's work history and educational background." Ibid.

Other courts have likewise recognized that not every impairment entitles one to disability benefits under the Act and that the impairment must cause inability to engage in *any* substantial gainful activity. With respect to the disability standard, the court said in Adams v. Flemming, 276 F.2d 901, 904 (2d Cir. 1960):

> " * * * Judicial notice can be taken of the fact that the human anatomy is subjected to many ills. There are undoubtedly millions of people suffering daily from some infirmity: those who go to work with sinus conditions in varying degrees; those whose arthritic and rheumatic symptoms flare up and subside; those who are afflicted with migraine headaches which seriously affect temporarily their ability to work; and those who suffer from various spinal ailments and discomforts. None of these persons can be said to

be unable 'to engage in any substantial gainful activity.' "

See also: Ussi v. Folsom, 254 F.2d 842 (2d Cir. 1958), adopting the opinion of the District Court on this question, 157 F.Supp. 679 (N.D.N.Y.1957); Graham v. Ribicoff, 295 F.2d 391 (9th Cir. 1961).

█ In the instant case the Appeals Council was required to evaluate both the medical evidence relating to claimant's arthritis and the nonmedical evidence, including Mrs. Gotshaw's statements in her applications and her testimony, and on the basis of all such evidence decide whether she had established her inability to engage in employment because of her impairment. Where the evidence was in conflict, or subject to conflicting inferences, it was for the Appeals Council on behalf of the Secretary to resolve such conflicts.

The Appeals Council found, with respect to the medical evidence, that it did not show claimant's inability to engage in work "not requiring prolonged walking, standing or heavy lifting." The finding was clearly permissible.

Looking to the nonmedical evidence, it appears that claimant was unable to operate a particular type of spinning machine. However, it further appears, as found by the Appeals Council, that if it were not for the fact that the old machines had been replaced, the claimant could have continued, despite her difficulties, doing the same work she had done for years.

█ Inability to perform a particular job is *not* "inability to engage in any substantial gainful activity." [5] Furthermore, claimant testified that she had made no attempt to get any other kind of work and offered as the only excuse her own belief that she could not "hold up to it."

In Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960), after pointing out that a claimant's capabilities must be considered, the court stated in footnote 3 at page 904: " * * * 'he is not required to sell apples or to start his own business' * * *, but neither is he entitled to make no effort to secure some sort of gainful employment." And, as Judge Chesnut observed in Wareheim v. Ribicoff, 194 F.Supp. 533, 535 (D.Md.1961), it was "quite significant" that the claimant made no effort to obtain employment. [6]

The District Court found substantial evidence to support the Secretary's decision and we cannot say that this was error.

Affirmed.

---

5. See: Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977 (1935); Graham v. Ribicoff, 295 F.2d 391 (9th Cir. 1961).

6. See also: Druminski v. Ribicoff, 194 F. Supp. 798, 802 (D.Alaska 1961); Sampson v. Flemming, 189 F.Supp. 725, 728 (D.Kan.1960); Grindstaff v. Flemming, 188 F.Supp. 44, 46 (W.D.N.C.1960).