Maude NETTLES, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, United States of America, Defendant.

**Civ. A. No. 7611.**

United States District Court
E. D. South Carolina,
Charleston Division.

March 28, 1964.

Walker, Brown & McKellar, Ridgeland, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant.

DALTON, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended (hereinafter called the Act) (42 U.S.C.A. § 405(g)), to review a "final decision" of the Secretary of Health, Education and Welfare disallowing the plaintiff's claim for disability insurance benefits under Section 223[1] of the Act (42 U.S.C.A. § 423), and her claim for the establishment of a period of disability[2] under Section 216(i) of the Act (42 U.S.C.A. § 416(i)).

To be entitled to the establishment of a period of disability and disability insurance benefits, the burden is on the plaintiff to show:

(1) that she is unable to engage in any substantial gainful activity,

(2) that this inability is the result of a medically determinable impairment,

(3) and that the inability can be expected to result in death or to be of long-continued and indefinite duration.

42 U.S.C.A. §§ 416(i) (1), 423.

The plaintiff, Maude Nettles, was born on May 1, 1899. She had a fifth-grade education. In 1953 she was employed by Holiday Wear, Inc., Ridgeland, South Carolina. She was engaged in making maternity dresses, a production job requiring substantial speed. Although there is some conflict in the record as to when plaintiff terminated her employment, it appears that she was "laid off" sometime in the summer of 1958 because of a shortage in work to be done. She was called back in February 1959 at which time she worked only for a short period.[3] She alleges that she was unable to continue because of her arthritic condition. She did not work thereafter.

The plaintiff filed applications for disability insurance benefits and for a period of disability on March 27, 1959, alleging that she became disabled November 1, 1958, as a result of arthritis and hookworms. These claims were disallowed by the Bureau of Old-Age and Survivors Insurance, Social Security Administration (hereinafter called the Bureau) on or about August 31, 1959. After reconsideration, at plaintiff's request, the disallowance was affirmed by the Bureau on August 15, 1960. The basis for the Bureau's determination was that the plaintiff's impairment was not of sufficient severity to render her continuously unable to engage in any substantial gainful activity within the meaning of the Act.

Thereafter, on January 17, 1961, the plaintiff requested a hearing before a hearing examiner of the Social Security Administration. This hearing was held on March 23, 1961, and on July 17, 1961, the hearing examiner found that the claimant was not entitled to the establishment of a period of disability

---

1. 42 U.S.C.A. § 423(c) (2) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

2. 42 U.S.C.A. § 416(i) (1) makes the § 423 disability definition applicable to 42 U.S. C.A. § 415(b) (1) (B) which excludes periods of disability from the divisor in determining average monthly wages for old age benefits—the so called "disability freeze".

3. In her application for disability benefits, filed March 27, 1959, the plaintiff placed the onset of her disability on November 1, 1958. She testified at the hearing that she was "laid off" in the summer of 1958 and that she was called back in November, 1958; at which time she worked for a week and was unable to continue. However, according to an affidavit (filed by the plaintiff) entered by an employee of Holiday Wear, Inc., based on the personnel records of the firm, Maude Nettles worked through the week ending June 13, 1958, and was not thereafter employed until February, 1959, and was last employed during the period ending March 27, 1959. (Tr–51, 113)

or to disability insurance benefits. On September 15, 1961, the claimant was notified that her request for a review of the hearing examiner's decision by the Appeals Council was denied. Thus, the findings of the hearing examiner became the "final decision" of the Secretary of Health, Education and Welfare, which is now subjected to review by this court.

██ If there is substantial evidence in the record to support the findings of fact by the Secretary, then the findings are conclusive. 42 U.S.C.A. § 405(g). The court is of the opinion that the Secretary's decision is supported by the evidence in the record.

The hearing examiner found that, based upon plaintiff's earnings record, she met the earnings requirement of the Act, to be entitled to disability benefits, both at the time she alleges she became disabled and at the time she filed her applications. Thus, the question for decision is, whether there is substantial evidence to support the Secretary's finding that the plaintiff's impairments did not preclude her from any substantial gainful employment prior to or at the time she filed her application. Two elements of this problem must be examined. The first element involves the nature and extent of plaintiff's impairments; and the second is the plaintiff's capacity to engage in substantial gainful activity. Maude Nettles personally testified before the hearing examiner that she was able to do very little cooking and virtually no housework; that she spent much of her time sitting in the house reading the newspaper or resting in bed; that she sometimes needed help dressing; that her insteps were stiff and her knees were swollen; and that her legs were stiff and never without arthritic pain. She also complained that at times she had pains in her neck, shoulders and hands.

Her husband testified that for at least six months prior to March 1961 he had prepared meals for her; that occasionally he had to help her turn over in bed and help her with bedcovers. The hearing examiner commented upon her appearance at the hearing. He stated that she occasionally cried during the proceeding but that her expressions did not evidence severe pain. Her ankles appeared slightly swollen. Her hands were not swollen and she seemed to have good use of her elbows and wrists. She said that she could not close her fist tightly. According to Mrs. Nettles, she could do nothing at all.

The medical history in the case, however, does not favor this view of the evidence. Plaintiff, herself, testified that prior to the arthritic infirmity in 1958, she had not been seriously ill. As near as can be determined from the record, plaintiff first visited Dr. John Ryan, a physician in her home town of Ridgeland, South Carolina, sometime in the fall of 1958, suffering from pain in her fingers. He diagnosed her condition, according to her testimony, as "a bad case of arthritis". (Tr–50–52) At that time she spent a week in the hospital at Ridgeland and was not improved. Dr. Ryan then referred her to the Medical College Hospital in Charleston, South Carolina. She spent five weeks there, under the care of Dr. Kelly T. McKee.

The findings by Dr. McKee are of significant value here. She was admitted to the Medical College Hospital on April 14, 1959, several weeks after she filed her application for disability benefits and five months after she allegedly became disabled. Dr. Kelly in his letter dated May 11, 1959, reporting the patient back to Dr. Ryan, two days after her discharge from the hospital on May 9, 1959, stated that "the patient was well developed and nourished, mentally alert, and did not appear acutely ill." Pertinent information in Dr. McKee's report follows:

" * * * Extremities revealed tenderness in the shoulders, elbows, wrists, and fingers. No significant degree of swelling was noted in any joint, and there was no acutely inflamed joint. Mild inflammatory reaction, however, was present in the knees and metacarpal phalangeal joints. * * *

"X-rays of the right hand showed no abnormality except a small enchondroma of the proximal end of the index finger * * *.

"In the hospital Mrs. Nettles had temperature to 102.4 on one occasion, and during the first week temperature generally ran between 100° and 101°. * * * and thereafter was essentially normal.

"She was transfused with two pints of blood and received tetrachlorethylene for therapy of the hookworm infestation."

The plaintiff reported the hookworm condition as one of the impairments contributing to her disability. However, both plaintiff's testimony and the medical evidence indicate that she was cured of this trouble during this hospitalization and was not troubled with it thereafter. (Tr–52, 91)

Continuing with Dr. McKee's report:

" * * * As stated above her progress was very gradual but consistently toward improvement. The improvement in mobility and decrease in pain was quite marked following the initiation of steroid therapy.

"At the time of her discharge she was able to be up and about, and was considerably stronger. * * * " (Tr–90–92)

There is no evidence of any further medical treatment until July 1960 when the plaintiff requested that the Bureau reconsider its denial of her application. At that time she was examined by Drs. J. H. Mathias, Jr., and Ernest G. Edwards. Dr. Mathias filed a medical report which indicated swelling of the knees and joints of her hands. He also noted that she was walking with difficulty, but that she had good range of motion of all joints with pain. (Tr–98–99)

Two days later Dr. Edwards, an orthopaedic surgeon, upon examination reported that she was "in no particular distress at this time". His findings in part were as follows:

" * * * In general the wrist, shoulders, elbows have a good range of motion. * * * The hip joints are free, there is a full range of motion in the knee joints. An A.P. and lateral x-rays was made of the right knee joint. These revealed no evidence of fractures, dislocations or arthritis. The joint space and surfaces are normal." (Tr–100)

The record disclosed two additional reports dated March 17, 1961, and March 18, 1961, both addressed "To whom it may concern." In the earlier of these, Dr. Harrison Peeples, of Estill, South Carolina, stated:

" * * * It can be expected that Mrs. Nettles has long-continued process which will prevent her from being engaged in substantial gainful activity." (Tr–109)

The next day Dr. T. B. Carroll, Jr., in Hardeeville, South Carolina, reported a severe osteoarthritis with response to therapy "very poor." He further stated:

" * * * This condition has existed for past 3 years. This person is totally and permanently disabled." (Tr–110)

Apparently, these doctors were visited on two successive days in March 1961 for the purpose of obtaining reports prior to the scheduled hearing held on March 23, 1961. There is nothing in the record which would indicate that she had ever visited either of them before. Similarly, there is not to be found in Dr. Carroll's report, or elsewhere, the basis upon which he concluded that her reported condition had existed for three years.

During this same period, an additional medical report was obtained from Dr. Louis Rhodes who was associated with the aforementioned Dr. Peeples. His report indicated that plaintiff then suffered from enlargements of knee joints and ankles with limitations in motion of the knees, ankles and spine. He stated that she had grown progressively worse and was considered totally and permanently disabled.

■ In regard to the weight that is to be given these medical opinions for purposes of this review, the holding in Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962), is important:

"The ultimate fact in issue; that is, Claimant's ability or inability to engage in any substantial gainful activity, is not to be resolved, however, solely on the basis of medical opinion evidence as to this ultimate fact. Opinion evidence on this issue is without weight. * * * This is a matter for administrative determination."

The final medical report was rendered on May 12, 1961, after an examination on May 1, 1961, by Dr. H. E. Rollings, Savannah, Georgia, performed at the request of the hearing examiner and at government expense. In summarizing the findings of his examination which included x-ray studies of the areas considered most troublesome by the plaintiff, Dr. Rollings stated:

" * * * this patient is apparently suffering from moderately severe mixed arthritis. * * *

"Apparently this patient has not been treated on a regular program or with consistent follow-up. * * *

"I certainly believe that this patient could be significantly benefited by a complete therapeutic program carefully followed, since very little deformity is now present. * * *" (Tr–114–116)

■ The Fourth Circuit has recently adhered to the rule that where a substantial medically determinable impairment is shown to exist, the Government should go forward with the evidence and show what, if any, kind of work the claimant is able to do, and whether this kind of work, if any, is available to him.[4] Woodson v. Celebrezze, 325 F.2d 479 (4th Cir. 1963); Cochran v. Celebrezze, 325 F.2d 137 (4th Cir. 1963). See also,

Butler v. Flemming, 288 F.2d 591 (5th Cir. 1961); and Kerner v. Flemming, 283 F.2d 916 (2nd Cir. 1960). We do not think this rule is applicable here. In Cochran, the court found, on facts later held to be indistinguishable from Woodson, that the disabilities were clearly established by the record. In both cases the hearing examiners expressed serious doubts as to whether the claimants would be able to return to their prior means of employment as coal miners, but concluded that the claimants would be able to engage in many more or less sedentary occupations. In Cochran, the medical reports, with but one exception, confirmed the fact of total disability.

None of these elements are present here. There is a marked absence of any convincing evidence that a severe and continuous impairment exists. In any event, the hearing examiner, while observing that plaintiff did have an arthritic condition, concluded that except during periods of acute flare-ups she would be able to engage in her former occupation as an electrical sewing machine operator. (Tr–17) The plaintiff testified that her condition bothered her most when she was required to stand, bearing her weight for long periods of time. It is noted that her former job entailed sitting before the sewing machine and operating it by depressing an apparatus for supplying current to the machine with her knee.

There were several medical opinions to the effect that plaintiff was "totally and permanently disabled." But these appeared for the most part to have been based upon subjective symptoms related by the plaintiff rather than upon objective factual findings resulting from examination. Furthermore, Drs. McKee and Rollings who examined plaintiff at some length, both examinations including laboratory and x-ray studies, expressed no such opinion. In fact, both men observed that her condition was remediable and that with proper treat-

---

4. "We do not mean by that to suggest that the formal burden is on the Government to make any such specific showing since the statute puts the general burden on the claimant." Butler v. Flemming, 288 F. 2d 591, 595 (5th Cir. 1961).

ment she could be significantly benefited. (Tr–90–92, 116)

 The standard set by the Act to establish a disability claim does not require one to be completely helpless or bed-ridden, or so to speak, "at death's door". Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (7th Cir. 1959). Aaron v. Fleming, 168 F.Supp. 291 (D.C. M.D.Ala.1958). But the plaintiff must show a substantial impairment which has the effect of continuously precluding her from substantial activity. See Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962); Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960).

 The language of Judge Moore in Adams v. Flemming, supra, is helpful:

> "Judicial notice can be taken of the fact that the human anatomy is subjected to many ills. There are undoubtedly millions of people suffering daily from some infirmity; those who go to work with sinus conditions in varying degrees; those whose arthritic and rheumatic symptoms flare up and subside; those who are afflicted with migraine headaches which seriously affect temporarily their ability to work; and those who suffer from various spinal ailments and discomforts. None of these persons can be said to be unable 'to engage in any substantial gainful activity.'" 276 F.2d 901, 904.

In Gotshaw v. Ribicoff, supra, the record disclosed that the claimant had suffered from arthritis for many years prior to her alleged disability. Whereas, here, the plaintiff was "laid off" because of a shortage in work to be done. Mrs. Gotshaw, according to her testimony, worked steadily until she was laid off because she could not "keep the work up." In Gotshaw, the Secretary of Health, Education and Welfare determined that the claimant was not "disabled" within the meaning of the Act on or before the date of her last application. The Court of Appeals affirmed the District Court's finding that there was substantial evidence to support the administrative decision.

From a comparison of the facts it appears that Mrs. Gotshaw's claim for benefits was stronger than the claim in the instant case. In fact, the Court stated that there was strong evidence which indicated that Mrs. Gotshaw was under a disability subsequent to the filing of her latest application. While here it was stated by Dr. Rollings in May, 1961 that if the plaintiff would undertake a carefully followed therapeutic program, her condition could be significantly benefited.

The hearing examiner has evaluated both the medical evidence relating to plaintiff's arthritis and the non-medical evidence, including the information supplied by her in the applications and at the hearings, and on the basis of all this evidence he was required to decide whether she had established her inability to engage in substantial gainful activity. The court finds that the evidence supports the decision of the Secretary that the record fails to disclose an impairment which rendered plaintiff unable to engage in any substantial employment prior to or at the time she filed her applications as is required by Sections 216 (i) (2) and 223(a) (1) (D) of the Act. (42 U.S.C.A. §§ 416(i) (2), 223(a) (1) (D)). Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962). The court finds, therefore, that the plaintiff, Maude Nettles, is not entitled to the establishment of a period of disability and that she is not entitled to disability insurance benefits. The Government's motion for summary judgment is granted and the action is dismissed.

An order will be entered accordingly.