**Johnnie O. MILLER, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 2627.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Oct. 20, 1970.

---

14. *See* Necchi v. Necchi Sewing Mach. Sales Corp., 348 F.2d 693 (2d Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L. Ed.2d 664 (1966).

Franklin W. Kern, Charleston, W. Va., for plaintiff.

W. Warren Upton, U. S. Atty., Charleston, W. Va., Leo J. Meisel, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. Plaintiff filed an application for disability benefits on February 1, 1968, which was denied initially, on reconsideration and by a hearing examiner. On September 11, 1969, the Appeals Council denied plaintiff's request for review and this decision became the final decision of the Secretary. Plaintiff then instituted a civil action in this court on September 29, 1969, and on November 28, 1969, this court, upon the motion of the Secretary, remanded the case to the Appeals Council for further proceedings. Thereafter, the Appeals Council vacated its prior decision, further evidence was received and on May 27, 1970, it rendered the Secretary's final decision affirming the hearing examiner's determination which held that the plaintiff is entitled to a period of disability commencing February 11, 1967, and terminating on February 18, 1968. Plaintiff takes exception to the Secretary's action in limiting the duration of his disability to February 18, 1968, contending that it continued uninterruptedly to May 27, 1970, the date of the final decision. This matter is now before the Court upon the cross motions of the parties for summary judgment under Rule 56.

Plaintiff currently meets the special earnings requirements, and on the basis of his application, to sustain his claim he must establish that he was under a disability within the meaning of the Act,[1] when the final decision of the Secretary was rendered. Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969); Davidson v. Ribicoff, 204 F.Supp. 368 (S.D. W. Va.1962). Thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act, though such proof need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

> "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *"

In short, the Courts are not to try the case *de novo*, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of

---

1. The term "disability" is defined in Sections 216(i) and 223 of the Social Security Act, as amended, to mean: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The 1968 Amendments of the Act imposed the additional requirement that "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job exists for him, or whether he would be hired if he applied for work."

the law does not contemplate that the Courts should surrender their "traditional functions," but that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the administrative finding is supported by substantial evidence and to see that the administrative agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962); Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965). In determining the meaning of "substantial evidence," the Courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court on this review is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

Plaintiff was born March 23, 1930, is married and has nine children. He completed the third grade in school, but can only read and write his name. His work experience has been exclusively that of manual labor chiefly in the timber industry. He was injured on February 11, 1967, when he fell from a truck. He returned to work three weeks later and hurt his back loading a tire on a truck; he was in the hospital in traction for sixteen days, returned home and again injured his back resulting in his being hospitalized and placed in traction. He worked under the ADUC program for five days in 1968, but quit because it was too painful to his back. His only source of income at the present time is $165 a month from welfare. He alleges disability since February 11, 1967, the date of his first injury.

A searching review of the record as a whole in this case convinces the Court that the plaintiff has failed to sustain the burden of proof in this proceeding, as contemplated by the holdings of Davidson v. Ribicoff, supra, and Thomas v. Celebrezze, supra. Under these holdings plaintiff must establish that he had an impairment, or impairments, as defined in Section 223(d) (3) of the Act, as amended, 42 U.S.C.A. § 423(d) (3), viz.:

> " '(A) physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The applicable regulations, 20 CFR 404.-1502(b), place the burden on a claimant of establishing by "medical evidence, and where necessary by appropriate medical tests" that he had medically determinable impairments which "must be the primary reason" for his inability to engage in any substantial gainful activity. Such impairments may be considered "medically determinable" only if they "can be verified by the use of clinical and laboratory diagnostic techniques" and any resulting disability must be shown to be due to "structural, physiological or psychological changes which can be identified" by the use of such techniques. 20 CFR 404.1510(a). Such impairments must also result in a lack of ability to perform "significant functions." 20 CFR 404.1502(b). Moreover, the supporting medical evidence should be "complete enough to support an independenat diagnostic therapeutic and prognostic conclusion" to this effect. 20 CFR 404.1510(b).

Following is a brief summary of the relevant medical evidence:

1. Dr. Frank R. Jamison, general practitioner, examined plaintiff on October 10, 1966, in connection with a leg injury. He walked with a limp and mo-

tion in the affected limb was less than normal with pain and tenderness elicited upon all extreme attempts. He had more tenderness and greater loss of normal range of motion than during a prior examination in 1964. The doctor estimated 25% permanent partial disability in connection with this injury.

2. Plaintiff was hospitalized on March 23, 1967, as a result of a back injury. Dr. O. D. MacCallum noted sciatic tenderness, acute low back strain and right sciatic neuritis. He was discharged on April 4, 1967, as somewhat improved.

3. Plaintiff was again hospitalized on December 28, 1967, with complaints of backache with lower hip and left leg numbness. Dr. C. M. Caudill, neurological surgeon, stated that his neck motion was free although discomfort was alleged. A straight leg raising test for spine nerve involvement was positive and the impression was possible herniated disc of the lumbar spine. X-rays of the lumbar spine and pelvis were negative. He was discharged on January 16, 1968.

4. Plaintiff was examined several times by Dr. A. A. Abplanalp, orthopedic surgeon. On November 24, 1967, the diagnosis was low back strain, possible ruptured intervertebral disc and questionable early arthritic process. Lumbosacral and sacroiliac tests were positive. He was reexamined on February 12, 1968 and his back and neck motions were found to be good in all directions. He was given a slip to return to light work on February 19, 1968.

5. Dr. C. J. Lesaca, general practitioner, and Dr. Jamison examined plaintiff in July 1968. Both doctors gave him a 30% permanent partial disability in connection with his ankle injury. Dr. Lesaca stated that he would have difficulty doing work involving climbing steps, kneeling or squatting.

6. On October 25, 1968, plaintiff was examined by Dr. Harold Kuhn, orthopedic surgeon. His diagnosis was lumbosacral strain, myofacial strain and bilat-

eral sciatica. His condition was stated as static and no treatment was indicated. He noted injury to plaintiff's scrotum and testicles and recommended a genito-urinary consultation. He estimated a 15% disability. X-rays of the back and pelvis were negative.

7. Plaintiff was examined by Dr. Edgar Barrett, orthopedic surgeon, in November 1968. The doctor stated that he had a 50% range of neck motion, was resistant to shoulder movements and had tenderness in the lumbar spine on the right. No obvious muscle weakness or wasting was noted. He stated that plaintiff had a good deal of tension and spasm throughout the back area although there were no objective findings.

8. Dr. Donald Gilbert, urologist, examined plaintiff in November 1968. He reported a hydrocele about the left testicle which would require minor surgical correction. No other problems were noted.

9. An examination by Dr. Ferdinand M. Viscuse, general practitioner, was performed on May 13, 1969. He reported a definite progressiveness and aggravation of plaintiff's condition since 1967; there was more residual pain and deformity of the right leg, foot and ankle with some limitation of motion. He estimated a 45% permanent partial disability as a result of the ankle injury.

10. Dr. Carl Roncaglione, orthopedic surgeon, examined plaintiff on March 16, 1970. X-rays of the upper spine indicated no bone abnormality but X-rays of the lower spine suggested possible rheumatoid disease of an insignificant degree. His impression was that plaintiff's incapacitation was temporary and could be salvaged with better motivation.

At the request of the Appeals Council, all the medical reports were examined by Dr. Ernest A. Brav, orthopedic surgeon. He concluded that since January 1, 1969, and possibly earlier, the plaintiff could have performed on a full-time basis, sedentary to light work activity not requiring heavy lifting, repetitive spinal bend-

ing, squatting or extended weight bearing without periods of rest. He further stated as follows: "I do not find any conflict in the medical record and the severity of back and right lower extremity impairment has been definitely recorded, together with the functional capacity of the claimant for limited but regular work activity."

Dr. Karl Heiser, consulting psychologist, testified at the hearing relative to plaintiff's residual vocational capacity. He stated that, considering plaintiff's age, education and work experience, all the medical evidence and the fact that he could not return to his former work, there were, subsequent to February 19, 1968, several types of work of a light and sedentary nature which he could perform on a sustained basis, including sander or assembler in the prosthetic applicance industry; trimmer, cutter, sewer or stringer in the venetian blind industry; or gateman, industrial guard, watchman or flagman. These jobs were stated to be in significant numbers in the regional and national economy.

 When considering the record as a whole, it is clear that the Secretary's decision is supported by substantial evidence. It is apparent to the Court, and several examining physicians so found, that one of plaintiff's major impairments is a lack of motivation to work. While this Court is fully aware that clinical medical reports are not necessarily dispositive of the question of a claimant's disability, Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965), it is clear that such reports are essential to an obvious interrelation of the four elements of proof the fact finder must recognize in determining a claimant's ability or inability to engage in any substantial gainful activity. Underwood v. Ribicoff, supra. This interrelationship includes (1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinions as to the significance of these clinical findings, (2) the diagnoses and expert medical opinions of the treating and ex-

amining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability as testified to by plaintiff, and (4) plaintiff's educational background, work history and age. Underwood v. Ribicoff, supra. While it is undoubtedly true that this plaintiff suffers from the residuals of his back and ankle injuries to some extent, it is well established that disability under the Social Security Act means the *total inability* to engage in any substantial gainful activity, including work of a less arduous nature than the plaintiff's usual employment. Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962); Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962).

Thus, viewing all the medical evidence, as well as the testimony of the plaintiff, we cannot in good conscience say that the Secretary's findings with respect to plaintiff's condition is not supported by substantial evidence of record.

Therefore, believing the Secretary's decision that plaintiff's period of disability terminated on February 18, 1968, is supported by substantial evidence, defendant's motion for summary judgment must be granted.