**Rachel R. BLALOCK, Appellee,**

**v.**

**Elliot L. RICHARDSON, Secretary of the Department of Health, Education and Welfare, Appellant.**

**No. 72–1187.**

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1972.

Decided Aug. 28, 1972.

Judith S. Feigin, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C., and John K. Grisso, U. S. Atty., Greenville, S. C., on brief), for appellant.

James B. Stephen, Spartanburg, S. C. (George H. Thomason, Spartanburg, S. C., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

The Secretary of Health, Education and Welfare appeals from a decision of

the district court reversing the Secretary's administrative denial of disability benefits to claimant, Rachel R. Blalock.

Mrs. Blalock applied for a period of disability and disability benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i), 423, alleging rheumatoid arthritis in her hands. Upon initial denial of her application, Mrs. Blalock requested and was granted a hearing at which she was represented by counsel. The decision of the hearing examiner was also adverse to claimant whereupon she filed additional evidence in the form of medical reports which were not before the examiner, in support of her request for reconsideration by the Appeals Council. The Council denied[1] her request after consideration of the record and new evidence.[2]

Pursuant to Section 205(g) of the Act, as amended, 42 U.S.C.A. § 405(g), claimant sought judicial review in the United States District Court. It is from the decision of that court awarding her disability benefits that the Secretary appeals. Bearing in mind the limited nature of the court's power of review we conclude that the judgment below cannot be upheld.

█ Claimant had the burden of proving her disability to the satisfaction of the Secretary,[3] under a two-fold test. First, there must be a medically determinable physical or mental impairment, and second, the impairment must be such as to render her unable to engage in substantial gainful employment. 42

U.S.C.A. § 423(d); 20 CFR §§ 404.-1501(b), 1532(b). Hayes v. Gardner, 376 F.2d 517, 520 (4 Cir. 1967); Laws v. Celebrezze, 368 F.2d 640, 643 (4 Cir. 1966). See, Brown v. Celebrezze, 367 F.2d 455, 456 (4 Cir. 1966); Cyrus v. Celebrezze, 341 F.2d 192, 194 (4 Cir. 1965); Thomas v. Celebrezze, 331 F.2d 541, 545 (4 Cir. 1964). She had the additional problem here of proving that her claimed disability existed prior to June 30, 1964, the date she last met the special earnings requirement. 42 U.S.C.A. § 423(c); 20 CFR Subpart B, §§ 404.101–120. Flack v. Cohen, 413 F.2d 278, 279 (4 Cir. 1969); Brown v. Celebrezze, 367 F.2d 455, 457 (4 Cir. 1966). See, Brandon v. Gardner, 377 F.2d 488, 491 (4 Cir. 1967).

█ The scope of judicial review by the federal courts is specific and narrow under Section 205(g) of the Act. That section provides that ". . . the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." The fact that the record as a whole[4] might support an inconsistent conclusion is immaterial,[5] for the language of § 205(g) precludes a *de novo* judicial proceeding[6] and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by "substantial evidence." Whiten v. Finch, 437 F.2d 73, 74 (4 Cir. 1971); Rome v. Finch, 409 F.2d 1329, 1330 (5 Cir. 1969); Hayes v. Gardner, 376 F.2d 517, 520 (4 Cir. 1967).

1. 20 CFR § 404.947:
 The Appeals Council may dismiss . . . or, in its discretion, deny or grant a party's request for review of a hearing examiner's decision . . . .

2. 20 CFR § 404.943 provides that evidence not before the examiner may not be received by the Appeals Council unless it appears to the Council that such additional information "may affect its decision."

3. The burden is on claimant to prove her disability to the Secretary, though not beyond a reasonable doubt. Cyrus v. Celebrezze, 341 F.2d 192, 195 (4 Cir. 1965);

Thomas v. Celebrezze, 331 F.2d 541, 545 (4 Cir. 1964); Miller v. Richardson, 325 F. Supp. 91, 92 (S.D.W.Va.1971).

4. A review of the Secretary's decision must be made on the record as a whole. Flack v. Cohen, 413 F.2d 278, 279 (4 Cir. 1969).

5. Thomas v. Celebrezze, 331 F.2d 541, 543 (4 Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518, 520 (4 Cir. 1962).

6. Harris v. Richardson, 450 F.2d 1099, 1101 (4 Cir. 1971); Flack v. Cohen, 413 F.2d 278, 279 (4 Cir. 1969); Thomas v. Celebrezze, 331 F.2d 541, 543 (4 Cir. 1964).

The phrase "substantial evidence" has been defined by this court to be:

". . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Laws v. Celebrezze, 368 F.2d 640, 642 (4 Cir. 1966). *Accord,* Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Kyle v. Cohen, 449 F.2d 489, 492 (4 Cir. 1971); Daniel v. Gardner, 404 F.2d 889, 890, n.1 (4 Cir. 1968); Hayes v. Gardner, 376 F.2d 517, 520 (4 Cir. 1967); Thomas v. Celebrezze, 331 F.2d 541, 543 (4 Cir. 1964).

■ There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision: (1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age. Underwood v. Ribicoff, 298 F.2d 850, 851 (4 Cir. 1962). *Accord,* Lackey v. Celebrezze, 349 F.2d 76, 77 (4 Cir. 1965); Dillon v. Celebrezze, 345 F.2d 753, 755 (4 Cir. 1965); Jenkins v. Celebrezze, 335 F.2d 6, 8 (4 Cir. 1964); Thomas v. Celebrezze, 331 F.2d 541, 545 (4 Cir. 1964).

■ Claimant originally alleged rheumatoid arthritis in her hands as the basis of her disabling impairment. However, all evidence introduced at the hearing upon which the district court based its decision was that she was permanently disabled due to a severe neurosis coupled with a grossly inadequate personality. The court stated:

"The Secretary's decision is not supported by substantial evidence. A thorough review of the medical data in the record reveals that the plaintiff has suffered from a chronic severe mental impairment since 1954 and that the impairment has continued to the present. Medical reports from Spartanburg General Hospital disclose that in 1954 plaintiff suffered from emotional hysteria and a guilt or escape complex. The treating physician reported that the plaintiff seemed emotionally unsound and didn't seem to know when to laugh or cry."

Mrs. Blalock is thirty-nine years of age and attended junior college for slightly over one year. Prior to the onset of her alleged disability, she held a variety of jobs including work in an automobile club, a shirt manufacturing plant, a laundry, and from 1959 to 1961 at the John Dritz Company packaging sewing aids even though she claimed that the rheumatoid arthritis was disabling on March 31, 1960.

In August of 1954, Mrs. Blalock, then Rachel Rollins, was admitted to Spartanburg General Hospital with a provisional diagnosis of endometriosis. The examining physician, Dr. Smart, in noting his observations, stated in the medical record that it was "probably emotional hysteria; guilt or escape complex." Nonetheless, a dilation and curettage was performed. The existence of an actual physical source of her problem was supported by a postoperative report of the surgeon who performed an appendectomy on claimant in October of 1954. In that report he stated that she suffered from a par ovarian cyst and possible endometriosis of the right fallopian tube and ovary.

In December of 1954 claimant was again admitted to the hospital with a diagnosis of thrombophlebitis. Once again the examining intern, this time a Dr. Smith, felt that the cause of her trouble was "more likely hysteria."

It was obviously on these reports not in evidence before the hearing examiner that the district court based its decision to overturn the Secretary's denial of benefits. However, this evidence is merely of a cumulative nature indicating

that Mrs. Blalock had the beginnings of an emotional impairment two years earlier than previously thought but it does not indicate a degree of severity necessary to sustain a finding of a period of disability under the Act prior to the expiration of her insured status.

Mrs. Blalock's family physician from 1956 until 1961 stated in a letter that he had seen her infrequently and always in connection with a physical ailment, and while he had noted an element of hysterical conversion, it was not marked at the time. Emotional instability is not thereafter evidenced until 1964. Mrs. Blalock's chiropractor, who was treating her for a spine problem not diagnosed by her physicians, stated in a letter that he found her to be very nervous and despondent at times and that she had at one time talked of taking her life. This falls far short of proof of a disability which would render her incapable of engaging in "substantial gainful employment."

 Claimant relied heavily on the testimony, given in 1970, of Dr. Moody, the physician who admitted her to the hospital in December of 1964, six months after her insured status had expired, that it "was quite evident that her intense and extreme anxiety was not of sudden onset but went back probably many years." This testimony was in serious conflict with the medical records made by Dr. Moody in 1964, in which he reported that she suffered from acute anxiety (i. e., short-term) and that she responded favorably to treatment that indicated a moderate attack,[7] and was released in "good" condition. In choosing to disregard Dr. Moody's testimony as the product of a "somewhat faulty memory," the hearing examiner was functioning as the trier of fact whose duty it is to resolve conflicts in the evidence.[8]

Claimant contends that the evidence of an earlier onset, coupled with her eventual decline to permanent disability,[9] supported a finding that she was disabled prior to 1964. Acceptance of such contention would require that the medical testimony be interpreted as proving that her mental deterioration was accomplished between eight and ten years after the first symptoms were recorded. Such an interpretation is not compelled, as shown by the Medical Advisor, Dr. Galloway, who testified:

> ". . . she had this inadequate personality, as far as the record indicates, I think essentially life-long; but I don't think from the record that we have a significant degree of evidence of a *significant* degree of psychoneurosis until well after 1961. We have some evidence of it then; we have evidence in 1964, but we don't have those intervening years, the time during the so-called critical period." (Emphasis added.)

It is evident, therefore, that Dr. Galloway acknowledged the probable existence of symptoms earlier than 1956 but concluded that the impairment had not reached a disabling stage prior to expiration of Mrs. Blalock's insured status. The new evidence offered by claimant only served to support Dr. Galloway's diagnosis that her illness was "gradual and progressive."

We are of the opinion that the decision of the Secretary was supported by "substantial evidence" and that the judgment of the district court must be set aside.

Reversed.

---

7. Dr. Galloway, the Medical Advisor, stated that the medicine prescribed for the attack indicated that it was of moderate severity.

8. Richardson v. Perales, 402 U.S. 389, 399–400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Thomas v. Celebrezze, 331 F.2d 541, 543 (4 Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518, 520 (4 Cir. 1962).

9. There is little doubt that Mrs. Blalock is now disabled within the meaning of the Act but there was no positive evidence of this until she was interviewed by a psychiatrist, Dr. Doss, in 1970, six years after her insured status expired.