817 F.2d 102
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Helen I. JONES, Plaintiff--Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant--Appellee.
 No. 86-3119.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1987.
Decided April 22, 1987.
 
 Before HALL and CHAPMAN, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 Susanne Koster Henley (Alan Hilliar Legum, P.A., on brief), for appellant.
 Paul Steven Ceja, Assistant Regional Counsel (Beverly Dennis, III, Chief Counsel; Charlotte Hardnett, Supervisory Assistant, Regional Counsel, Office of the General Counsel; Breckinridge L. Willcox, United States Attorney; Larry D. Adams, Assistant United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 This case deals with the appeal by Helen I. Jones (hereinafter plaintiff), of a final decision of the United States District Court for the District of Maryland' granting summary judgment to the Secretary thus affirming the finding of the Secretary of Health and Human Services (hereinafter defendant) that the plaintiff was capable of performing sedentary work which existed in the national economy, and was therefore not disabled to an extent which would entitle her to disability insurance benefits and Supplemental Security Income.
 
 
 2
 The jurisdiction of this court is based upon the final judgment of the District Court for the District of Maryland in accordance with 28 U.S.C. Sec. 1291, with subject matter jurisdiction for the appeal being based upon 42 U.S.C. Sec.405 (g) .
 
 
 3
 Review of the findings of the defendant in a case such as this is limited under the Social Security Act to determining whether the defendant's decision is supported by substantial evidence, 42 U.S.C. Sec. 405(g) providing in pertinent part that, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." If it is thus supported, that decision must be affirmed. Richardson v. Perales, 402 U.S. 389 (1971). Further, the case law has elaborated a definition of "substantial evidence", defining the term as relevant evidence such as a reasonable mind might accept as adequate to support a conclusion, consisting of more than a scintilla of evidence but somewhat less than a preponderance of the evidence. Blaylock v. Richardson, 483 F.2d 773 (4th Cir. 1972).
 
 
 4
 Plaintiff's physical complaints were several in nature, but the thrust of her application is a claim of disability because of an injured knee, and because of the pain associated with the injured knee. There is also evidence of "seizures", apparently related to grand mal epilepsy, but it appears conceded that this particular disability would only preclude the plaintiff from working around moving machinery, working at heights, etc. As indicated, the thrust of the plaintiff's complaints centers on the disability and pain which she assigns to her knee.
 
 
 5
 In respect to the knee, there is evidence from three medical doctors and from the plaintiff. Also, there was evidence from a vocational expert. Two of the medical doctors, namely, Drs. Cooper and Verkouw, were the plaintiff's treating physicians, while Dr. Zamani is an orthopedic surgeon to whom the plaintiff was referred by the Social Security Administration for examination and evaluation.
 
 
 6
 The record discloses that at the time of the hearing before the Administrative Law Judge (hereinafter ALJ) plaintiff was 53 years of age, referred to as "obese" and as "slightly overweight". She had been employed for a number of years as a domestic, and later was employed as a kitchen helper and finally as a cook in the kitchen of the Crownsville Hospital. It was in this last occupation that she began to complain of her knee and claims to have become disabled in November, 1983.
 
 
 7
 Dr. Zamani's report of September 21, 1984, concludes by saying:
 
 
 8
 This lady overall is having a lot of complaints but clinical findings are very much limited. There is minimal swelling of the knee and some chondramalacia of the patella and I believe she is not a good candidate of kneeling, squatting, but standing and walking and not frequent walking should not be a problem. She says her seizure disorder is well under control and overall I do not see this lady to be totally disabled.
 
 
 9
 (Court transcript, p. 185) .
 
 
 10
 The first report from Dr. Verkouw, dated November 14, 1984, summarized the results of his treatment and observation of the plaintiff in the following fashion:
 
 
 11
 I would like to reiterate that I believe that this patient's disability is based on a poor result from a knee operation. The operation was intended for the removal of a loose body by arthroscopy but apparently was extended to involve a complete open exploration of the knee. You will have to write to Dr. Cooper for the details. I think that the patient's marked obesity has contributed to the difficulties with her knee. I do not believe that the patient's request for disability can be justified on the basis of heart disease, hypertension, diabetes, or epilepsy.
 
 
 12
 (Court transcript, p. 188-89) .
 
 
 13
 In a second letter of the same date of November 14, 1984, Dr. Verkouw concludes his observations in the following language:
 
 
 14
 In summary then I don't believe there is any question about the fact that Mrs. Jones is disabled. She cannot perform any kind of activity that would involve extensive standing, walking, or any kind of activity that invovles [sic] the use of her knee. She could conceivably do some work sitting down with her leg elevated but I think with her training and background it would be difficult to consider her for any job that she could perform.
 
 
 15
 (Court transcript, p . 191) .
 
 
 16
 In a medical report of May 3, 1985, Dr. Cooper states in relevant part as follows:
 
 
 17
 As stated before in several different consultations and medical reports, I do not believe that the patient will be able to return to her previous occupation. Her right knee, I believe, is in a permanently disabled status.
 
 
 18
 (Court transcript, p. 199).
 
 
 19
 In a previous letter of June 26, 1984, Dr. Cooper stated, "it is anticipated that she will never be able to return to her previous occupation. My recommendation is that she undergo early retirement because of her right knee disability." (Court transcript, p. 200).
 
 
 20
 While difficult to discern precisely what the plaintiff's complaints of pain, and degree of pain, may have been, a fair reading of her testimony is that she has severe pain apparently on an intermittent basis, saying at one point in the transcript, "Sometimes it's severe [pain] and sometimes it is a mild pain." She further testified,
 
 
 21
 Only thing I know is that my leg pains -sometimes it feels like it is in a knot. If you just--if you could stretch it out. Then there's sometimes where--you can -you don't have any pain at all with your leg and then sometimes you have pains with it. And it's just one of those things. Sometimes you can get up and you feel good. Then again sometimes you don't. It's one of those things....
 
 
 22
 (Court transcript, pp. 55-56) . She further stated that it was a pain that comes and goes and that it was not a constant pain. The plaintiff also testified that the knee was unstable, in that it "gave way" on her on occasion.
 
 
 23
 Testimony was elicited from the vocational expert, based first on hypotheticals stated to the vocational expert by the ALJ, and. on amplified hypotheticals directed to the expert by plaintiff's counsel. The testimony of the vocational expert indicated that, given the medical condition that he had seen from the various medical reports, the testimony of the plaintiff herself, and the other materials in the record, he was of opinion that there were a number of sedentary occupations which the plaintiff could undertake, finding that her skills were transferable to those sedentary occupations which he identified in reasonable number in the immediate area. The vocational expert also hypothesized that if the plaintiff were in pain severe enough to require elevation of the leg, or otherwise impair her productivity, twenty percent of the time, she would be unemployable in the current employment market.
 
 
 24
 In looking at the medical reports, it must be concluded that the reports indicate an inability of the plaintiff to continue in her employment as a cook, as shown in the various quotations set out above from Dr. Verkouw and Dr. Cooper. While those quotations refer to "disability", they refer to that condition in relation to her former employment as a cook. Similarly, Dr. Zamani finds that she is not disabled, in terms of Social Security standards.
 
 
 25
 Taken together, the medical reports of Drs. Verkow, Cooper, and Zamani indicate disability in terms of the plaintiff's being unable to continue in her occupation as a cook, but do not speak to total disability. When that is coupled with the testimony of the vocational expert, it appears that there are a number of jobs in the economy which the plaintiff could perform, given the condition of her knee.
 
 
 26
 The AJL found that the complaints of pain were not of sufficient intensity to justify the invocation of the combination of objective and subjective complaints to reach a level sufficient to merit a finding of disability. The opinion of the ALJ found further support for this position in the fact that there were few objective signs of pain to be found in any of the medical reports. In response to questioning by her own attorney, the plaintiff did not indicate pain sufficient to impair her productivity by twenty percent or more. While this court would not require the plaintiff specifically to testify to a percentage of impairment, recognizing the difficulties inherent in estimating an apparently erratic level of pain, the plaintiff's testimony, taken as a whole, justified the ALJ's implicit conclusion that the "twenty percent" level of impairment was not present in the plaintiff's complaints.
 
 
 27
 From a careful review of the evidence before the ALJ, it must be concluded that there is substantial evidence to support the conclusions which the ALJ reached. Certainly, there is more than a scintilla of evidence supporting his position. While there may be contrary evidence as to her ability to perform as a cook, there does not appear in the record anything which sufficiently contravenes the vocational expert's testimony about the availability of sedentary jobs in the economy which she could perform.
 
 
 28
 The case was decided below on opposing motions for summary judgment, with the court granting the motion of the defendant for summary judgment and denying the motion of the plaintiff for summary judgment.
 
 
 29
 .For the reasons indicated, and finding substantial evidence to support the decision of the defendant Secretary, the ruling of the court below is
 
 
 30
 AFFIRMED.
 
 
 31
 ---------------
 
 
 
 1 While it cannot be determined with precision from the materials, i.e., briefs, Joint Appendix, and portions of the record itself, as filed with this Court, it appears that this case was referred to the United States Magistrate pursuant to the provisions of 28 U.S.C. Sec. 636(c).