James A. McCLANAHAN, Plaintiff,

v.

CALIFANO, Secretary of Health, Education & Welfare, Defendant.

Civ. A. No. 77–0063–B.

United States District Court, W. D. Virginia, Big Stone Gap Division.

Sept. 22, 1978.

---

Larry G. Browning, Royal City, Va., for plaintiff.

Paul R. Thomas, Jr., U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

Plaintiff, James A. McClanahan, has petitioned this court to review the final decision of the Secretary of Health, Education and Welfare denying his claim for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* Jurisdiction of this court is pursuant to § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates, by reference, § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). That section provides in part that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." The only issue to be decided by this court is whether the Secretary's final decision is supported by substantial evidence, and if it is this court must enter summary judgment for the Secretary.

Plaintiff filed an application for black lung benefits on July 15, 1970, and on November 16, 1970, an initial determination was made that claimant was entitled to black lung benefits. (Tr. 59, 63). After having been found disabled, however, claimant failed to receive black lung benefit checks and inquired into the matter at the appropriate district office of the Social Security Administration. As he was employed at that time as a coal miner, he was advised that his wages from that employment were being set off against the black lung benefits that were due. He was then informed that in order to receive those benefits he would have to cease work in the coal mines. As a result, claimant terminated his coal mining employment and began receiving monthly black lung checks. It was subsequently determined by the Secretary that an error had been made in the processing of claimant's claim. A chest X-ray report was interpreted by an examiner as showing complicated pneumoconiosis and, thereby, creating an irrebuttable presumption of total disability due to pneumo-

coniosis as provided by § 411(c)(3) of Title IV of the Federal Coal Mine Health and Safety Act of 1969, Title 30 U.S.C. § 921(c)(3). The reading of the X-ray report, however, was unquestionably wrong, as the report in question clearly states that there is "[n]o evidence of pneumoconiosis." (Tr. 114).

Having discovered the error the Administration suspended claimant's black lung benefit payments in October of 1971, and the case was reopened for review and possible revision. (Tr. 64–66). Claimant then attempted, without success, to get his old coal mining job back. On August 15, 1974, the claimant was notified that his benefits were reinstated effective August, 1972, ". . . pending a final determination on [his] initial black lung award." (Tr. 76). Claimant's congressman was then notified of the resumption of benefit payments to claimant. The letter, however, failed to mention that the resumption was conditioned upon a final determination of claimant's entitlement to benefits by the Administration. An adverse determination was ultimately rendered, and on December 30, 1974, the claimant was notified to that effect. (Tr. 79). He then filed a request for reconsideration and his claim was again denied. On April 3, 1975, claimant was informed of the denial and advised of his possible duty to refund the overpayments to the Administration. He then filed a request for a hearing which was held on November 19, 1975. (Tr. 23).

From the hearing, the Administrative Law Judge determined that "[t]he claimant was erroneously awarded black lung benefits pursuant to an initial determination of November 16, 1970" and that "the claimant does not have complicated pneumoconiosis." (Tr. 15). It was further determined that pneumoconiosis was neither established by X-ray nor other evidence of record and that the evidence failed to establish that the claimant had a totally disabling chronic pulmonary or respiratory impairment. (Tr. 15). The Administrative Law Judge then found that the claimant "is not entitled to black lung benefits." (Tr. 16). He concluded, however, that "[t]he claimant was without fault in connection with the overpayments" and that repayment of the erroneously paid benefits "must be waived." (Tr. 16).

Two questions are presented by this case. The first question is whether the Secretary's decision, that the claimant is not suffering from totally disabling pneumoconiosis or a totally disabling chronic respiratory or pulmonary impairment, is supported by substantial evidence, and the second question is whether the Secretary is estopped from denying claimant's entitlement to benefits.

Claimant is thirty-nine years old, has a seventh grade education, and worked as a coal miner for approximately thirteen years. He testified that he suffers from difficulty in breathing, that he has pain in his legs, back and shoulders upon deep breathing, that he has a coughing problem, and has difficulty sleeping. Dr. William C. Barr conducted a roentgenographic examination of claimant's lungs on November 2, 1970. Dr. Barr read the X-ray as negative for pneumoconiosis. (Tr. 114). Dr. Dorris A. Cunningham conducted another X-ray examination of claimant's lungs on August 19, 1971. (Tr. 124). Dr. Cunningham read the X-ray as negative for pneumoconiosis. (Tr. 124). This film was reread by Dr. M. W. Donner on April 8, 1972, and again found to be negative for pneumoconiosis. (Tr. 129). A third X-ray examination of claimant's lungs was performed by Dr. J. P. Sutherland on October 22, 1971. From this examination, Dr. Sutherland found opacities in all six lung zones read as category 2/1p pneumoconiosis. He also found emphysema and the scarring of each hilus. (Tr. 131). This film was reread as negative on December 5, 1972, by Dr. Bob W. Gayler. (Tr. 132). Dr. Robert Abernathy performed ventilatory function studies on August 19, 1971. Claimant's height was measured at 67¾ inches, his MVV after bronchodialator was read at 58 L./Min., and his $FEV_1$ at 3.03 L. (Tr. 116). Dr. Abernathy diagnosed chronic bronchitis and seasonal asthma but found no evidence of coal worker's pneumoconiosis. (Tr. 126). Dr. J. A. Rob-

inson examined the claimant in December of 1971 and found his lungs to be normal noting that claimant was not appreciably short of breath. (Tr. 134–135). Various ventilatory function studies conducted on January 29, 1973, resulted in values which failed to meet the values of either the interim or permanent criteria. (Tr. 145, 147, 149, 151, 153, 155). Blood gas studies conducted on March 19, 1973, resulted in a $PO_2$ measurement before exercise of 98 mmHg and a $PCO_2$ measurement of 40.4 mmHg and respective values after exercise of 95 mmHg and 44 mmHg. (Tr. 141).

Pneumoconiosis is defined as a chronic dust disease of the lungs arising out of employment in a coal mine, 30 U.S.C. § 902(b), and includes the diseases and conditions designated in 20 C.F.R. § 410.110(o). Total disability is defined in § 402(f) of the Act, 30 U.S.C. § 902(f), and in the regulations prescribed by the Secretary. *See* 20 C.F.R. § 410.412 and other regulations which are referred to in that section. The Secretary, pursuant to the mandate of § 411(b) of the Act, 30 U.S.C. § 921(b), has promulgated regulations for determining whether a miner is totally disabled due to pneumoconiosis, 20 C.F.R. § 410.401 *et seq.*, which, along with the statutory standards and presumptions, establish alternative tests for entitlement.

The first relevant alternative test is established under the interim adjudicatory rules set forth in 20 C.F.R. § 410.490. Pursuant to that section, in the case of a coal miner who worked ten years or more in underground or comparable coal mine employment, there is rebuttal presumption of total disability due to pneumoconiosis arising out of such employment where (1) an X-ray, biopsy, or autopsy establishes the existence of simple pneumoconiosis, or (2) ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease, as demonstrated by values equal to, or less than, specific values which are set forth in that section. 20 C.F.R. §§ 410.490(b)(1)(i) and (ii). If a claimant is unable to establish entitlement to benefits pursuant to the interim criteria of § 410.490 he may, nevertheless, establish entitlement

under the rules which are set out under the permanent criteria as set forth in §§ 410.-412 to 410.462. Title 20 C.F.R. § 410.490(e).

Pursuant to the "permanent criteria" a claimant may establish total disability due to pneumoconiosis by showing X-ray, biopsy, or autopsy evidence of the existence of pneumoconiosis. 20 C.F.R. § 410.414(a). Alternatively, in the case of a deceased miner, a claimant may raise a rebuttable presumption of total disability due to pneumoconiosis by showing that the miner was employed for fifteen or more years in the coal mines and "if other evidence [than a chest X-ray] demonstrates the existence of a totally disabling respiratory or pulmonary impairment . . . ." Title 30 U.S.C. § 921(c)(4). The Secretary may rebut this presumption only by showing either that the miner did not have pneumoconiosis or that his respiratory or pulmonary impairment did not arise out of or in connection with employment in a coal mine. *Id.*

Under the interim criteria, claimant failed to establish the existence of pneumoconiosis by X-rays. He is, therefore, not entitled to a finding of totally disabling pneumoconiosis pursuant to Title 20 C.F.R. §§ 410, 490(b)(1)(i). Likewise, ventilatory function tests which were performed at various times from 1971 through 1973 failed to qualify the claimant pursuant to the values established by Title 20 C.F.R. § 410.-490(b)(1)(ii). Consequently, claimant failed to establish totally disabling pneumoconiosis pursuant to the interim criteria.

Pursuant to the "permanent criteria" the claimant would be entitled to a presumption of totally disabling pneumoconiosis if he could establish (1) more than fifteen years of coal mining employment, (2) a respiratory impairment, and (3) total disability as a result of his impairment. *See Phillips v. Mathews*, 555 F.2d 1182 (4th Cir. 1977). The evidence establishes that the claimant has less than fifteen years of coal mining employment. While it does demonstrate some lung disfunction, it does not demonstrate that the claimant's respiratory impairment is totally disabling. The

768

evidence includes not only blood gas studies which fail to meet the values established in the appendix to the regulations, but also ventilatory function results in excess of the values established pursuant to § 410.426(b). Furthermore, the other evidence of record fails to establish such an impairment.

■ "Substantial evidence" is defined as "more than a mere scintilla" and as such evidence as a "reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Certainly, one could reasonably conclude from the evidence that the claimant was suffering from neither pneumoconiosis nor a totally disabling chronic respiratory or pulmonary impairment. Accordingly, the Secretary's determination that claimant is not suffering from a disability within the purview of the Black Lung Act is supported by substantial evidence.

■ Concerning the reopening and revising of claimant's award, Title 20 C.F.R. § 410.621 provides that an ". . . initial determination shall be final and binding upon the party or parties to such determination unless it was reconsidered in accordance with §§ 410.623–410.629 or it is revised in accordance with § 410.671." Title 20 C.F.R. § 410.671 provides, with certain exceptions not herein applicable, that an initial determination may be revised by the Administration upon its own motion within the appropriate time period prescribed in § 410.672. Title 20 C.F.R. § 410.672(a) provides, in part, that an initial determination of the Administration may be reopened "[w]ithin twelve months from the date of the notice of initial determination . . ." Reading the regulations together it is manifest that the Secretary may reopen a case within twelve months for any reason, and once properly reopened the time limits of § 410.672 are inapplicable. Claimant was notified of the Secretary's initial determination on November 16, 1970, and the matter was reopened in October of 1971. Conse-

quently, the reopening and revising of the initial determination was timely under § 410.672. Such a finding does not determine the controversy, however, as a question remains as to whether the Secretary should be estopped from denying claimant's claim to benefits.

While there is evidence that the claimant terminated his coal mining employment in order to receive black lung benefits, nevertheless, with the exception of a period from October, 1971, to July, 1972, claimant received such benefits. Furthermore, in 1974, he was awarded social security disability benefits with an onset disability date of October 31, 1973. For purposes of receiving social security disability benefits, "disability" is defined as the inability "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). Receipt of such payment, therefore, is a representation by the claimant that he is incapable of engaging in any substantial gainful activity which exists in the national economy. Consequently, as of the October 31, 1973, onset award date for social security disability benefits, claimant cannot claim prejudice as a consequence of the voluntary termination of his coal mining employment. Furthermore, the only colorable claim of prejudice prior to that date would have to relate to the period of October, 1971, to July, 1972, during which claimant was neither employed nor receiving either social security disability or black lung benefits, and as the total amount of black lung benefit payments received subsequent to his award of social security disability benefits exceeds the amount he would have received under the Black Lung Act for the October to July period, a claim of prejudice should be foreclosed. The court finds, therefore, that the Secretary is not estopped from denying claimant's entitlement to black lung benefits.

For the above-stated reasons, summary judgment is entered for defendant.