**Gertrude DeVAUGHN, Plaintiff,**

v.

**Joseph CALIFANO, Secretary of the Department of Health, Education and Welfare, Defendant.**

**No. 77 C 50.**

United States District Court,
E. D. New York.

Sept. 28, 1978.

Gertrude DeVaughn pro se.

David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., for defendant; Diane R. Eisner, Asst. U. S. Atty., Brooklyn, N. Y., Borge Varmer, Regional Atty., Region II, Dept. of Health, Education and Welfare, New York City, Julia T. Reed, Asst. Regional Atty., of counsel.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This action to review a denial of Supplemental Security Income (SSI) to plaintiff was initially referred to a United States Magistrate to review the administrative record, hear the contentions of the parties and report to the Court his recommended disposition of the defendant Secretary's motion for summary judgment. That has been done and the matter is now before the Court on the Magistrate's recommendation that the defendant's motion for judgment dismissing the action be granted. Plaintiff, who prosecuted her claim *pro se* throughout (with some assistance from her daughter), has timely filed a letter detailing her objections to the Magistrate's report, which the Court has considered in reaching its decision.

After an independent searching review of the record, the Court is unable to agree with the Magistrate's ultimate conclusion that the Secretary's determination denying plaintiff SSI benefits is supported by substantial evidence on the record as a whole. The Magistrate's report is, however, incorporated herein so as to avoid repeating his discussion of the prior administrative proceedings and the medical and other evidence he found supportive of the Secretary's decision.

Plaintiff, a widow now 57 years old, lives alone in a 1½ room low rent apartment in Brooklyn. She is of small build, giving her height as 5'1" and weight as 111 lbs. She

possesses a twelfth grade education and also attended a secretarial school where she learned shorthand and other skills that go with secretarial work. It does not appear that she ever used such skills in steady employment. In fact, it would appear that her only steady employment was that of machine operator in an "electric company." Exh. 3. Plaintiff held that job for some sixteen years, 1952–1968, leaving because she sustained a disabling accident to her foot (not connected with her employment) that made it difficult for her to operate the machine controls. She received a damage award of a little over $1,000, which she had been using to help support herself.

In 1973 plaintiff, who had been hospitalized a number of times for surgery after leaving her former employment, tried her hand at being a telephone operator, first for the New York Telephone Company and later for St. Mary's Hospital. These were only temporary jobs lasting but a few weeks. Aside from such employment, plaintiff has not been gainfully employed since she left the job at the "electric company" in 1968. And she has been in and out of hospitals on a fairly frequent basis since 1973. In fact, the City of New York provided her with a housekeeping aide for three days a week to help her cook and clean because of her apparent inability to get along alone. (Her daughter, who resides in New Jersey, occasionally visits but has her own family to care for.)

With the foregoing facts in focus, we now examine the rather meager findings and conclusions on which the Secretary relied in denying plaintiff SSI benefits. Tr. 10–16. First, the emphasis on lack of severity in physical impairments is misplaced, even though plaintiff's testimony stressed her physical complaints (except for claustrophobia). The Social Security Act recognizes that mental impairment can also be disabling. 42 U.S.C. § 423(d)(1)(A). Here, two qualified psychiatrists separately examined plaintiff two years apart and arrived at the same diagnosis—that she was suffering from an anxiety neurosis with phobic symptoms, particularly those of a claustrophobic nature. Dr. Arnold Mitchell, who examined her in 1973, was of opinion then that plaintiff was not employable and should have psychotherapy "on a continuing basis." Tr. 74. Dr. Eugene Becker, who examined her in 1975, did not state an opinion on employability, but his comment on her need for psychological testing to get to the root of her "multiple symptoms," Tr. 117, is hardly suggestive of any disagreement with Dr. Mitchell regarding her fitness to engage in substantial gainful activity.

■ At all events, it is clear from the record that plaintiff is suffering from a mental condition which may or may not be disabling but which was not explored in the *de novo* hearing. Where, as here, the claimant is unrepresented, it is incumbent on the administrative hearing officer to take a more active role in order to develop sufficient information to resolve that question. *Hess v. Secretary of HEW*, 497 F.2d 837 (3 Cir. 1974).

■ Second, the record also reveals that plaintiff was compelled by injury and illness to leave the long-term employment she formerly held, and strongly suggests her inability to resume such employment. It is axiomatic in this Circuit that a finding of ability to engage in other substantial gainful employment cannot be merely theoretical. *Kerner v. Fleming*, 283 F.2d 916, 921 (2 Cir. 1960). No attempt was made here to resolve by means of expert testimony this equally important factor in the disability equation—what can this claimant really do, taking into consideration her residual physical and mental capacity, her age, education and prior work experience?

For the foregoing reasons, defendant's motion for summary judgment must be denied, and the case is remanded to the Secretary for the development of additional medical and vocational evidence necessary to determine whether plaintiff's mental condition alone, or combined with other physical impairments, is disabling for Social Security purposes; and, if not, what gainful occupations exist in the national economy for a person of her residual functional capacity.

SO ORDERED.

APPENDIX

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – X

GERTRUDE DE VAUGHN,

 Plaintiff,

 –against–

SECRETARY OF HEALTH, EDUCATION
AND WELFARE,

 Defendant.

– – – – – – – – – – – – – – – – – – – – X

REPORT OF UNITED
STATES MAGISTRATE
77 C 50

A. SIMON CHREIN, Magistrate.

This is an action brought under § 205(g) of the Social Security Act 42 U.S.C. § 405(g) as incorporated by section 1631(c) of the Act, 42 U.S.C. § 1383(c) to review a determination of the Secretary of H.E.W. denying the plaintiff continued disability benefits under the Supplemental Security Income program (SSI). The plaintiff had been accorded presumptive aid to the disabled from New York State beginning in September 1973 and made retroactive to June 1973 (78).* When the aid to the disabled program was federalized, the plaintiff was converted to SSI effective January 1, 1974 (10). Subsequently, the Social Security Administration determined that the plaintiff had been improperly converted in that the presumption set forth in section 1614(a)(3)(E) did not apply. That section considers individuals as disabled if they are permanently and totally disabled as defined under a particular approved State plan. It was further determined that the plaintiff was not disabled within the meaning of the Act which defines disability as a physical or mental impairment that results from ana-

tomical, physiological or psychological abnormalities determinable by medically acceptable clinical and laboratory diagnostic techniques. The plaintiff received a notice of the change and requested a reconsideration of the determination (10). On October 31, 1974 the plaintiff was notified that upon reconsideration the decision that she was not considered disabled within the meaning of the Social Security Act was affirmed. The plaintiff requested a hearing on the question of her disability and a hearing was held before the Administrative Law Judge (ALJ) on October 30, 1975 (22). The ALJ determined on November 28, 1975 that the plaintiff was not under a disability (10–16) and his decision was approved by the Appeals Council on November 9, 1976 (4–5). The decision by the Appeals Council is the final decision by the Secretary of H.E.W. The question to be decided in connection with this review is whether the determination by the Secretary that the plaintiff is not disabled within the meaning of the Act is supported by substantial evidence.

The undersigned has carefully reviewed the record submitted by the Secretary and

* Numbers in parenthesis refer to pages in the record filed by the defendant.

 concludes that the Secretary's motion for judgment on the pleadings should be granted.

### DISCUSSION

In a medical history and disability report dated April 26, 1974, the plaintiff alleges a disability based on stomach disorder, arthritis and bursitis (58). The plaintiff testified that she had worked as a telephone operator for the Telephone Company and as a switch board operator for St. Mary's Hospital (34). She testified that she had no strength, that she felt pain in her joints due to arthritis, that she took tylenol and valium for the pain. She stated that she no longer had gynecological or gall bladder problems (37–38). Her daughter testified at the hearing and confirmed that her previous heavy vomiting and diarrhea had stopped after the plaintiff had undergone a gall bladder operation (48–49).

In addition to the symptoms discussed to this point the defendant had testified that she suffers from headaches which have not been eased by medication (51) that she had claustrophobia which affects her in elevators and has prevented her from taking the subway (51–52). The plaintiff further complains that her eyes do not function "good" but that she believes the eye condition to be a form of allergy (52–53).

The medical evidence considered by the ALJ contained a memorandum from Dr. Arnold Mitchell a psychiatric consultant dated July 19, 1973. Dr. Mitchell diagnosed the defendant as suffering from a psychological neurotic condition and claustrophobia. The doctor expressed an opinion that she was not then employable and recommended psychiatric therapy on a continuous basis. In the body of that report Dr. Mitchell states an opinion that the plaintiff shows no desire to seek help (74).

A report by Robert Thomas, M.D. dated September 5, 1973 shows an unremarkable physical examination. Though the report refers to phobic symptoms and anxiety symptoms, Dr. Thomas expresses the opinion that the plaintiff is employable from the physical standpoint (75–76). A medical report subscribed by a doctor whose signature is illegible found that Mrs. DeVaughn would require the services of a housekeeper for an indefinite period. This report was based on a diagnosis conducted January 24, 1975 (77). In a report dated May 14, 1975 Melvyn Berlind, M.D. found no condition that he would consider disabling for work during the course of his treatment of the claimant in 1974 (107). A New York City Health and Hospital report dated May 31, 1974 refers to complaints by the plaintiff of pain in her right shoulder but indicates that the x-rays were negative (111). In a report dated July 31, 1975 Burton Wollowick, M.D. states that the claimant ambulates with no difficulty, gets on and off the examining table without much problem, he notices full abduction and rotation of both shoulders, a full range of motion of the cervical spine as well as the lumbosacral spine, full flexion and rotation of both hips and no clinical evidence of restrictive joint motion or arthritis. Dr. Wollowick, an orthopedist, opines that Mrs. DeVaughn can walk, stand, sit and bend without any difficulty (119). A report of Dr. Harold N. Schwinger of the Unity Diagnostic Medical Group, dated July 22, 1975 indicates that a radiographic report shows no evidence of injury or other abnormality of the right hand, right hip or right shoulder (115).

A psychiatric report from Dr. Eugene Becker dated August 19, 1975 shows that Mrs. DeVaughn's mood was mildly depressed but her associations were intact, she was goal directed, fully oriented and suffered from no delusions or hallucinations. He diagnosed Mrs. DeVaughn as being afflicted with a mixed neurosis with symptoms of anxiety and phobic symptoms. He felt that psychological testing may be helpful (118). Not available for consideration by the ALJ but considered by the Appeals Council was a document from the Brooklyn Eye and Ear Hospital stating that Mrs. DeVaughn had a growth on her eye that

would have to be removed (127). Other evidence considered by the ALJ in addition to medical reports and testimony included a Department of Social Services diagnosis that the plaintiff was disabled as of June 1973 (78), and a note from St. John's Episcopal Hospital dated October 13, 1975 stating that the plaintiff would require a housekeeper "for the next few months" (126).

The claustrophobic symptoms complained of, while perhaps entitling the defendant to consideration are somewhat blunted by the fact that by the plaintiff's own testimony she had been troubled by those symptoms for ten years (51). The plaintiff has also testified that she had been employed within the period that she was affected by claustrophobia in a number of positions. Her last position being as a temporary switchboard operator in 1973 which position was discontinued when the regular operator returned to work (35–36). Additionally, the plaintiff testified that notwithstanding her inability to use elevators and subways she was able to drive a car and was able to walk some distance. Clearly, her travel was not so severely restricted as to be disabling. Her mental impairment was not so pronounced as to cause her to hallucinate or to interfere with her goal directions or orientations (118). Dr. Mitchell had, however, found that she evidenced no desire to seek help though it was explained to her that help might be effective in alleviating her neuroses. While Dr. Mitchell had found the plaintiff to be unemployable one cannot ignore her disinclination to obtain help for her condition (74). It has been held that refusal to undergo medical or psychiatric treatment or a thorough medical or psychiatric examination is a valid basis for denying benefits. *Gutierrez v. Secretary of H.E.W.*, CCH Unemp.Ins.Rep. ¶ 14,255 (S.D. N.Y. April 18, 1975). *Williams v. Secretary of H.E.W.*, CCH Unemp.Ins.Rep. ¶ 14,136 (S.D.N.Y. February 19, 1975). 20 C.F.R. 404.1527.

Dr. Mitchell's opinion that the plaintiff was disabled, of course, is not dispositive of Mrs. DeVaughn's claim. Even though physicians opinions are entitled to weight, the ultimate decision is one to be made by the Secretary, 20 C.F.R. Section 404.1526 and *Hofacker v. Weinberger*, 382 F.Supp. 572 (S.D.N.Y.1974). The disabling quality of the bursitis and arthritis claims are controverted by objective medical evidence. Dr. Schwinger found that x-rays did not show abnormality in the right hand, right hip or right shoulder. Additionally, Dr. Wollowick, an orthopedist, found the plaintiff substantially unlimited in her ability to move the affected parts of her body and further found that Mrs. DeVaughn was able to walk, stand, sit or bend without difficulty (119). The complaints concerning her stomach disorders which the plaintiff claims compelled her resignation from the Telephone Company (36), have apparently been alleviated as per her daughter's testimony that the heavy vomiting and diarrhea stopped with plaintiff's gall bladder operation (48–49). The plaintiff also testified that she was helped in this matter by the gall bladder surgery (48). Additionally, the report by Dr. Thomas, an internist dated September 5, 1973, after the alleged June 1973 onset of this disability found Mrs. DeVaughn employable from a physical standpoint (75--76). The growth on the plaintiff's right eye which prevented her from reading and about which the plaintiff testified was possibly of allergic origin is scheduled from removal surgery (127). An impairment that can be remedied by following prescribed medical treatment cannot be considered disabling for purpose of a disability award. *Knox v. Finch*, 427 F.2d 919 (5th Cir. 1970). *Stillwell v. Cohen*, 411 F.2d 574 (5th Cir. 1969). The plaintiff appears to be able to function to the extent of being able to drive and make her own clothes (40). She can walk, as she testified that she can walk about eight blocks (41) and her daughter testified that her mother accompanies her from door to door in connection with

their membership in the Jehovah's Witnesses (50). On the entire record it cannot be said that the Secretary's determination that the plaintiff is not disabled is not supported by substantial evidence. Section 205(g) of the Act provides that in a review of the final decision of the Secretary, the findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive. The term substantial evidence has been defined in a manner that would preclude review of the Secretary's determination of a question of fact if that determination is supported by more than a scintilla but less than a preponderance of evidence. *Blaloch v. Richardson*, 483 F.2d 773 (4th Cir. 1972), *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). Accordingly, the Secretary's finding of fact, if reasonable should not be disturbed by the Court on review. *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). *Gold v. Secretary of H.E.W.*, 463 F.2d 38 (2nd Cir. 1972). The conclusive effect of the substantial evidence rule applies not only in regard to the Secretary's findings of basic evidentiary facts but also as to inferences and conclusions drawn from those facts. *Levine v. Gardner*, 360 F.2d 727 (2nd Cir. 1966), *Rodriquez v. Celebrezze*, 349 F.2d 494 (1st Cir. 1965).

### CONCLUSION

For the foregoing reasons it is respectfully recommended that the motion of the United States for judgment on the pleadings be granted.