813 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James P. DiNENNA, Jr., Appellant,
v.
Richard S. SCHWEIKER, Secretary of Health and Human
Services, Appellee.
 No. 86-1556.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 10, 1986.
Decided Dec. 9, 1986.
 
 Before PHILLIPS, ERVIN and WILKINSON, Circuit Judges.
 John H. Quinn (McCarthy, Wilson, Ethridge and Quinn, on brief), for appellant.
 Marlene W. Heiser, Office of the General Counsel (Breckinridge L. Willcox, U.S. Attorney; Larry D. Adams, Assistant U.S. Attorney; Donald A. Gonya, Chief Counsel for Social Security; Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation; A. George Lowe, Chief, Disability Litigation Branch; Nellie A. Hutt, Office of the General Counsel, Social Security Division, Department of Health & Human Services, on brief), for appellee.
 PER CURIAM:
 
 
 1
 James DiNenna appeals from the denial of his claim for a period of disability[1] and disability insurance benefits[2] by the Secretary of Health and Human Resources (hereafter the "Secretary"). DiNenna obtained review of this denial of benefits in the United States District Court for the District of Maryland.[3] The court held that the record contained substantial evidence that DiNenna was not disabled prior to June 30, 1981, the last date on which he met the requirements for insured status.
 
 
 2
 In Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir.1972), this court identified four elements in this substantial evidence inquiry: the objective medical facts; diagnoses and opinions of doctors; subjective evidence of pain; and considerations of age, work history, and educational background. Upon consideration of these elements in DiNenna's case, we affirm the district court's decision.
 
 
 3
 DiNenna was forty-six years old when he applied for disability benefits in January, 1981. He claimed that he was disabled from his job as a mechanic for the District of Columbia public schools by a compression fracture of the spine and lumbar disc syndrome. He was denied both disability insurance benefits and supplemental security income benefits, initially and on reconsideration, by the Social Security Administration.
 
 
 4
 The matter was taken up before an administrative law judge (ALJ) in October, 1981. The ALJ denied benefits. In turn, the Appeals Council of the Department of Health and Human Services denied review in August, 1982. This denial of review rendered the ALJ's order the final decision of the Secretary. The United States District Court for the District of Maryland then remanded the case to the Secretary to obtain additional evidence on the existence of jobs that would permit DiNenna to work without undue discomfort to his back. The Appeals Council further remanded the case to the ALJ for proceedings consistent with the order of the district court.
 
 
 5
 A second hearing was held before the ALJ in July, 1984. At this second hearing, DiNenna presented new evidence of a disabling condition. He was, at this time, suffering from severe arthritis throughout his body, which was attributed by his doctors to lung cancer. Also at this hearing a vocational expert testified to the existence of jobs that DiNenna could perform, given his back condition. The ALJ denied his claim for disability benefits, but granted the claim for supplemental social security income.
 
 
 6
 The ALJ's denial of disability benefits was based on evidence that DiNenna's arthritis was not disabling prior to June 30, 1981. The evidence seemed to indicate that a clear change for the worse occurred in October, 1982. It was held that DiNenna was disabled only as of that later date. Prior to that date, the ALJ found, DiNenna could have worked in the sedentary jobs that were identified by the vocational expert. Since his covered period ended on June 30, 1981, he was not allowed disability benefits.
 
 
 7
 In February, 1985, the Appeals Council reviewed the decision of the ALJ and the medical evidence in the case and affirmed the denial of disability benefits. DiNenna reopened the case in the district court, which entered judgment for the Secretary in January, 1986. The district court found that there was substantial evidence that DiNenna was not disabled prior to June 30, 1981. The case comes to us on appeal from that judgment.
 
 
 8
 There was considerable evidence that DiNenna's back problem did not preclude him from participating in substantial gainful activity. The back problem was traced to a lifting injury in March, 1979. DiNenna has not worked since that time. In December, 1979, his treating physician, Dr. Kindred, contended that he had disc herniation and was accordingly disabled altogether. One year later, that physician believed him only "disabled as a mechanic." Other doctors concluded that DiNenna's back pains were illusory. Dr. Gordon found that DiNenna could or would not bend forward while standing, but could bend more than ninety degrees when seated--results that were inconsistent. Dr. Murphy believed that DiNenna was fabricating his test results. Dr. Eng, who had also been a treating physician, found DiNenna "capable of light duty work as early as November, 1979." The vocational expert testified that jobs existed in the region around the District of Columbia that were sedentary and potentially available to DiNenna, a high school graduate with vocational training as a skilled mechanic. On the basis of this record, the Secretary had substantial evidence for denying benefits.
 
 
 9
 The new evidence introduced at the second hearing before the ALJ suggested that DiNenna's arthritis made work impossible. The critical question is not whether the arthritis was disabling, but when it was disabling. Two doctors, Dr. Keegan and Dr. Harvey, wrote letters in 1984, around the time of the second hearing, stating that a tumor and accompanying arthritis were likely present in February or March of 1981, just prior to the cut-off date for DiNenna's disability coverage. However, two reports in 1983--one from Dr. Goldberg of the Vince Lombardi Cancer Research Center at Georgetown University and the other from Dr. Neefe at Georgetown Hospital--placed the onset of DiNenna's arthritis in October, 1982. The ALJ credited this later date, and these two medical reports constitute substantial evidence for the ALJ's decision.
 
 
 10
 In sum, the Secretary's decision is supported by medical opinion and vocational evidence. We therefore
 
 
 11
 AFFIRM.
 
 
 
 [1]
 See 42 U.S.C. Sec. 416(i)(1982). This section defines "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months," id. Sec. 416(i)(1)(A), or as blindness, id. Sec. 416(i)(1)(B)
 This section further defines "period of disability" as "a continuous period (beginning and ending as hereinafter provided in this subsection) during which an individual was under a disability (as defined in paragraph (1)), but only if such period is of not less than five full calendar months' duration or such individual was entitled to benefits under section 423 of this title for one or more months in such period." Id. Sec. 416(i)(2)(A).
 
 
 [2]
 See 42 U.S.C. Sec. 423 (1982) (describing eligibility for disability insurance benefits)
 
 
 [3]
 Judicial review of final decisions of the Secretary is provided at 42 U.S.C. Sec. 405(g) (1982)